15573

TOWN OF McCORMICK v. FOLLETT

(29 S. E. (2d), 539)

338 

 October, 1942. 

*Mr. Grover C. Powell,* of Atlanta, Ga., and *Mr. C. E. Cooley, of* Anderson, S. C., Counsel for Appellant, 

340.

*Mr. J. Fred Bushardt,* of McCormick, S. C., and *Mr. Jeff D. Griffith,* Solicitor, of Saluda, S. C., Counsel for Re-spondent,

August 26, 1943.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

Appellant was convicted in the Mayor's Court of the Town of McCormick and sentenced to pay a fine of $50.00 or be confined in jail for twenty days for violation of a municipal ordinance prescribing an occupational license tax. The classification in which he fell is as follows: "Agents selling books, per day $1.00, per year $15.00."

The instances of violation to which the evidence referred were of the sales of a cloth-bound book entitled "Children" and containing three hundred and sixty-eight pages of text with an elaborate index, purporting to be of an edition of three million copies, which cost the purchasers twenty-five cents each, but appellant contended that such price was a contribution. However, he admitted in testimony that he had no other income, living upon the profits of his sales or "contributions", and remitted to the publisher for the books after he disposed of them. The record indicates that he distributed other literature published by the Watch Tower Bible and Tract Society, Inc., of Brooklyn, New York, but the prosecution and conviction involved the book mentioned,

"Children", and only it was given this Court as an exhibit on the argument of the case.

After conviction and sentence, defendant appealed to the Circuit Court of General Sessions upon the ground that the prosecution should have been dismissed because the ordinance as here applied is in violation of the Fourteenth Amendment of the Federal Constitution (extending against the States the prohibitions of the Bill of Rights, the first eight amendments), in that it restricts freedom of speech, freedom of press and freedom of worship. It was also urged at the trial that there was insufficient testimony of an actual sale or sales of the books within the corporate limits of the Town of McCormick, but that ground was abandoned upon appeal to the Circuit Court. It may be said, however, that the conviction was upon trial by jury and they had ample evidence before them to sustain their finding of sales.

The appeal came before the Honorable E. C. Dennis, Presiding Judge, who heard the arguments thereon and took them under advisement for considerable time, afterward filing his order dated November 2, 1942, in which he sustained the conviction. The order is interesting and demonstrates his close study of the record and general careful consideration of the case. From it appellant has brought his appeal to this, the Court of last resort of this State.

We agree with the trial Judge in his observation that our decision of *State v. Meredith*, 197 S. C., 351, 15 S. E. (2d), 678, is not apposite. There it was found that the defendant was an itinerant minister of Jehovah's Witnesses and the sale by him of a book (apparently a different one from that involved here) in a rural community "was merely collateral to the main purpose in which he was engaged, which was to preach and teach the tenets of his religion," with no profit motive involved. The statute there invoked (the state hawkers and peddlers license law) was properly held

inapplicable and the decision of constitutional questions was expressly avoided.

Here the appellant contended in evidence and argument that he is an ordained minister of the same sect and he introduced in evidence a certificate of such of the Watch Tower Bible and Tract Society but there is no doubt of the fact, established in evidence that he earns his living by sale of the books, having no other occupation. This clearly takes him out of the rule of State v. Meredith. It will hardly be contended that any other minister may make his living by the sale of books and, should he engage in his occupation in the Town of McCormick, not be subject to the moderate license of $15.00 per year prescribed by the ordinance under attack.

It may be conceded that the book in question is a ■ religious book. Tested by the tenents of other forms of the Christian religion with which we are familiar, it is full of heresies. But it purports to offer a plan of salvation of the human soul in life after death, based upon quotations from the Bible, so we conclude without difficulty that its publication and distribution come within the meaning of the words, "exercise of religion," as they are used in the Constitution. Appellant's sect undertakes to make a now unimportant and obscure distinction between religion and Christianity, and on the back of his certificate of ordination, in evidence, is the following statement with reference to the book: "It is not religious, but fills the sincere heart with contentment and hope. It is not a child's book, but is for adults and children as well. Here is a copy for you, and you may contribute twenty-five cents to help publish more like books. Read Children, rejoice and live."

It is interesting to note that the able and long-experienced Judge who heard the case on Circuit sat as an Acting Associate Justice of this Court in State v. Langston, 1940, 195 S. C., 190, 11 S. E. (2d), 1, 2, a case affirming the convic-

tion of other Jehovah's witnesses of breaches of the peace. In his opinion for the Court he said: "In this State there are so many religious beliefs, so varied in what they teach and with such great differences, that one of the most fruitful, and yet fruitless, sources of argument is some theological question. It certainly cannot be said that there is not in this State an absolute freedom of religion."

For convenient reference the portion of the first amendment of the Federal Constitution, urged in opposition to the municipal ordinance under review, is here set out: "Congress (or a State or subdivision thereof—interpolated) shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press * * *."

It seems, and is, a very far cry from the import of the foregoing clause to the occupational license ordinance in question. Does application of the latter to appellant's sale of religious books violate the Constitution? Answering similar questions has troubled other Courts. In 141 A. L. R., beginning at page 538, is an enlightening annotation upon the subject following report of the five to four decision in *Jones v. City of Opelika,* and other cases, 316 U. S., 584, 62 S. Ct., 1231, 86 L. Ed., 1691, 141 A. L. R., 514. The following excerpts (141 A. L. R. at pages 540 and 542) from the editorial comment found in the annotation appear to be a fair summary of the decided cases upon the subject up to that time:

"The effect of the cases, taking them as a whole, seems to be that the sale, and also, presumably, the distribution without charge, of books and pamphlets dealing with religious subjects may be reasonably regulated as to time, place, and manner, without there being any invasion of. religious freedom as protected by Federal and state Constitutions. Furthermore, transactions of sale and solicitation of sale of such literature may be subjected to reasonable and nondiscriminatory taxation.

"In nearly every case wherein the question has been presented, the view has been taken that a reasonable nondiscriminatory license tax imposed upon the sale of religious literature from door to door is not invalid as an invasion of religious liberty guaranteed by constitutional provisions".

But the Supreme Court of the United States "went up the hill and down again" in its decision of *Jones v. Opelika, supra,* and vacated it in another equally closely divided decision. This action was coincidental with its decision of *Murdock v. Pennsylvania* and seven other cases, 319 U. S., 105, 63 S. Ct., 870, 891, 87 L. Ed., 1292, 146 A. L. R., 81, also by five to four. Does this last decision of that high Court, whose view is of course controlling upon the question involved, indicate reversal of the conviction and sentence of appellant? After most careful consideration, we do not think so. The facts of the *Murdock case* are materially unlike those of appellant's, although they appear to be members of the same religious sect. In view of what has been said of the case at bar it would perhaps be sufficient to point out that in the leading opinion in Murdock's case it was clearly said: "The cases present a single issue—the constitutionality of an ordinance which as construed and applied required religious colporteurs to pay a license tax as a condition to the pursuit of their activities." 63 S. Ct. at page 873. On the contrary, in the case in hand, we have the conviction of a resident of a town, the ordinance of which is involved, who earned his living by the sale of books and did so within the town without obtaining the required license, which latter would have cost him $1.00 per day or $15.00 per year. He was literally "selling books", the words of the ordinance.

The Supreme Court in its majority opinion in Murdock had in contemplation an itinerant preacher, and expressly referred to such, but this case, so far as the record discloses, does not involve an itinerant. The dictionary definition, and the commonly accepted meaning, of an "itinerant" is one

who travels from place to place. However, the appellant was selling books in the town of his residence. "Itinerant", used as an adjective by the Supreme Court, means: "Passing or traveling about the country; going or preaching on a circuit; wandering." Webster's New International Dictionary, 2d Ed., Unabridged, G. & C. Merriam Company, 1939. It is certainly not a distortion of the facts (see 63 S. Ct., at page 874) in this case to find, which we do, and hold, as did the lower Courts, that appellant's occupation was that of selling books and not that of a colporteur.

Furthermore, the Supreme Court based its acquittal of Murdock partly, at least, upon the ground that, quoting from 63 S. Ct. at page 876, "itinerant evangelists moving throughout a state or from state to state would feel immediately the cumulative effect of such ordinances as they become fashionable." But there is no evidence in the record, as has been pointed out, that appellant was "moving throughout a state or from state to state." In fact, as has been said, he was convicted for the violation of an ordinance of his home town. We think it clear that the reasoning in Murdock's case is inapplicable to this for the patent reason of the differing facts.

The majority of the Court there said (63 S. Ct. at page 874): "Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital." Undoubtedly, this is such a case but we think the sales proven were more commercial than religious. The license was required for the selling of books, not for the spreading of religion.

The contentions with reference to the constitutional inhibition against abridging the freedom of speech or of the press are plainly untenable and we think need not be discussed at length. The ordinance is not discriminatory and no effort was made in the Court below or

here to show that it is unduly burdensome. In this connection see *Grosjean v. American Press Co.,* 297 U. S., 233, 56 S. Ct., 444, 80 L. Ed., 660.

Thus we find no violation of the First Amendment (or the Fourteenth) to the Federal Constitution in the application of the ordinance to appellant and his book-selling. It is not, in our opinion, unconstitutional as so applied.

In appellant's extensive brief (eighty-four pages, exclusive of index and table of authorities cited) questions are argued which are based upon provisions of the South Carolina Constitution (of 1895) of similar import to those of the Federal Constitution which have been discussed. However, only the latter were relied upon in the trial Court, and are, therefore, properly raised here. What we have said, we think, rightly disposes of appellant's contentions with respect to them.

The exceptions are overruled and the judgment of the Circuit Court affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.