COMMONWEALTH *vs.* E. ROBERT ANDERSON.

SAME *vs.* HAROLD O. ROYAL.

Middlesex.   May 12, 1930. — June 30, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Hawkers and Pedlers. Constitutional Law,* Police power, Religious belief.. *Statute,* Amendment. *Motive.*

At the trial of an indictment charging that the defendant sold a book without a license in violation of G. L. c. 101, § 13 *et seq.,* it is immaterial that the defendant sold the book, not in pursuit of a trade or business, but at cost without deriving any gain for himself.

St. 1929, c. 349, § 3, amending G. L. c. 101, § 17, by omitting, from the enumeration therein of articles which may be sold without a license, certain articles, including books and pamphlets, placed articles so omitted within the operation of § 14: the amendment did not remove such articles entirely from the scope of c. 101, § 13 *et seq.*

A sale of a book without a license within the prohibition of G. L. c. 101, § 14, cannot be justified on the ground that the seller's motive was the dissemination of his religious beliefs, "a work of necessity for the well being of the people" and his "method of exercising . . . [his] religious convictions and belief."

It is settled law that States within their constitutional rights may regulate the sale, barter, or the offering for sale or barter, or the carrying for sale or barter, of goods, wares or merchandise, and impose penalties for the violations of such regulations. Per PIERCE, J.

Books and pamphlets, worldly or religious, are in their nature goods, wares or merchandise within the meaning of G. L. c. 101, § 13 *et seq.*

G. L. c. 101, § 14, interpreted so as to prohibit a sale of religious books and pamphlets without a license, does not violate art. 1 of the Amendments to the Federal Constitution or art. 11 of the Amendments to the Constitution of the Commonwealth: those articles were not designed to prevent the adoption of reasonable rules and regulations concerning the sale of religious books and pamphlets.

At the trial of an indictment charging the defendant with selling a book without a license in violation of G. L. c. 101, § 14, there was evidence for the Commonwealth to show such a sale; and the defendant testified that he called at various houses in a city and went from house to house therein and exhibited to people in the houses certain books of a

religious nature; that his purpose was to disseminate certain religious beliefs; that that was why he was going out proclaiming this message to the people; that he let people have the books at cost and paid his own expenses; and that he had no license to sell books. The trial judge denied a motion by the defendant that a verdict of not guilty be ordered and a motion "to order a verdict on the phase of the case referring to going from house to house"; and instructed the jury that, if they believed the defendant had told the truth, he should be found to be a pedler, "provided . . . [he goes] from house to house." The defendant was found guilty. *Held,* that there was no error in the denial of either motion or in the instructions to the jury.

Two INDICTMENTS, found and returned on September 6, 1929, each charging that the defendant sold a book without a license in violation of G. L. c. 101, § 14.

The indictments were tried together in the Superior Court before *Fosdick,* J. Material evidence, offers of proof by the defendants, rulings requested by them and refused by the judge and a portion of his charge to the jury are described in the opinion. The defendants were found guilty and alleged exceptions.

*S. Scott* of Maine, (*J. F. Hughes & H. H. Patten* with him,) for the defendants.

*R. T. Bushnell,* District Attorney, for the Commonwealth.

PIERCE, J. The defendants were found guilty on indictments based upon G. L. c. 101, as amended by St. 1929, c. 349, one charging in substance that E. Robert Anderson on September 1, 1929, did sell a book without a license so to do, in Melrose, in the county of Middlesex, and the other that Harold O. Royal did offer for sale a book, at Melrose, on the first day of September, 1929, without license so to do. The two cases were tried together. It was agreed that one bill of exceptions might be filed in behalf of both defendants and that the bill of exceptions filed contains all evidence material to the questions raised.

The evidence warranted the jury in finding the following facts as proved beyond a reasonable doubt: On September 1, 1929, the defendant Anderson came to the home of one Dodge, who lived at Melrose Highlands, with a suit case in his hand containing books. He took some out and offered to sell six books at the price of $2.50. Dodge did not buy

these books, but finally bought and received a set of books for $.25, which were offered in evidence. Dodge testified in cross-examination that Anderson said that "his object in doing this was to educate the people in the contents of these books" which the witness understood were of a religious nature. On September 1, 1929, the defendant Harold O. Royal came to the house of one Bowen with a suit case, asked for the mother of Bowen and when she came to the door said he had one book for sale at $5 and offered it to her but she did not take it. While Anderson was talking to Dodge, one Murray, who had seen Anderson pass the books to Dodge, asked Anderson if he had a license. Anderson replied that he had not and did not need one. While Murray was talking to Anderson, the defendant Royal appeared and when asked if he had a license to sell books said that he did not and further did not need one. Both defendants said they intended to continue to attempt the sale of books in Melrose.

At the trial the defendant Royal testified that he was in Melrose on September 1, 1929, called at various houses, explained the mission or the purport of his work or calling, exhibited to people therein books and pamphlets which he carried with him if they showed sufficient interest in his verbal message, if not he did not exhibit the books; that if people wanted these books he let them have them at the cost of publication; that he paid his own expenses when engaged in this work, which was philanthropic; that he never offered any book for $5, and that the highest amount accepted for any individual book was $.45. He further testified that he met the witness Murray and told him his purpose was to enlighten people concerning God's wonderful kingdom now being consummated on earth; that he told him that he did not have any license to sell books and he did not consider that he required one for that particular purpose; that he considered he was exercising his constitutional right in preaching the gospel according to the dictates of his conscience and that was why he was going out proclaiming this message to the people. Upon cross-examination he testified "that he was accompanied in the

same automobile as the defendant Anderson on the day in question and that the defendant Anderson was doing the same thing as him, that is going from house to house with these books for the same purpose."

Anderson testified that he was engaged in doing the same thing as Royal testified to; that he approached Dodge with the statement that he was associated with J. F. Rutherford of New York in spreading the message of good news among the people; that this message was to the effect that the time of deliverance was at hand for poor, groaning creation; that the "message . . . [was] too good to keep to . . . [themselves], and . . . [they were] constrained to go about and make it known to others"; that he carried six books and he presented six booklets to Dodge and told him that they were simply asking the cost of publication of those books; that the cost of the entire set was $2.45 for the six books and the six booklets "which . . . [he] came down to he could have for fifty cents, the cost of publication and handling"; that Dodge did not want these books, "so . . . [he] then came down to a combination of three booklets"; that ". . . [he] wanted to present him the opportunity of getting this combination that . . . [he] had, in order to bring it to his attention," and that Dodge then accepted the combination of three booklets and gave in return $.25 for them.

In the course of his examination the defendant Royal offered proof of, and the judge received in evidence, the following statement: "That on the first day of September A. D. 1929, commonly called Sunday, the defendants and each of them did call at one or more houses in the city of Melrose in said Commonwealth and did then and there exhibit to one or more persons, books and pamphlets containing an explanation of the Bible and instruction therein, and particularly in relation to God's kingdom and His means of blessing the human race, and did then and there deliver books, pamphlets and magazines containing Bible sermons and instructions and received from one or more persons money therefor, to wit: One book of three hundred eighty-five pages bound in cloth, stamped in gold, illustrated,

forty-five cents; and one paper covered book of sixty-four pages, ten cents; and on said occasion of so calling upon the persons mentioned, and at the homes mentioned, and at the time and places mentioned, the defendants and neither of them had a license as specified and contemplated by section 17 of the General Statutes [Laws?], Chapter 101 and Amendments thereto of said Commonwealth of Massachusetts."

At the close of all the evidence each defendant moved that a verdict of not guilty be ordered. The motions were denied and each defendant excepted. The defendants also excepted "to the failure of the court upon the defendants' motion to order a verdict on the phase of the case referring to going from house to house."

The defendants made seven requests for rulings, all being to the effect that sections of G. L. c. 101, as amended by St. 1929, c. 349, in relation to the sale of goods, wares and merchandise did not cover religious books, tracts and pamphlets and that if they attempted to cover them they were unconstitutional. As respects these requests the judge ruled as follows: "I believe it to be the law that each defendant has a constitutional right to disseminate his religious belief, but I further rule that that doesn't cover the selling of books from house to house without a license." During the direct examination of Royal the defendants offered proof that they were and are now fully consecrated to do the will of God and anointed by the Lord as followers of Jesus Christ and the servants of Jehovah; that they have certain religious beliefs; that they believe that their work "on the occasion mentioned while going from house to house and calling upon the people and exhibiting the books, is a work of necessity for the well being of the people; that they believe it to be a religious work, because it has to do with informing the people of God's Word and is defendants' method of exercising their religious convictions and belief." These offers of proof, with other offers of similar purport, subject to the defendants' exceptions were not received in evidence.

Upon the motion that a verdict of not guilty be ordered, manifestly the first question for decision is whether any law

of the Commonwealth prohibits the acts done by the defendants. G. L. c. 101, § 13, defines "hawker" and "pedler" as "any person, either principal or agent, who goes from town to town or from place to place in the same town selling or bartering, or carrying for sale or barter or exposing therefor, any goods, wares or merchandise, either on foot, on or from any animal or vehicle." G. L. c. 101, § 14, prohibits and imposes a penalty upon a "hawker or pedler who sells or barters or carries for sale or barter or exposes therefor any goods, wares or merchandise, except as permitted by this chapter." G. L. c. 101, § 17, provides: "Hawkers and pedlers may sell without a license books, newspapers, pamphlets, fuel, provisions, yeast, ice, live animals, brooms, agricultural implements, hand tools used in making boots and shoes, gas or electric fixtures and appliances, flowering plants and all flowers, fruits, nuts and berries that are uncultivated." St. 1929, c. 349, § 3, amended G. L. c. 101, § 17, by striking out said section and inserting in place thereof the following: "SECTION 17. Hawkers and pedlers may sell without a license newspapers, ice, flowering plants, and such flowers, fruits, nuts and berries as are wild or uncultivated." It is to be noted that books and pamphlets by reason of the change in the original section by St. 1929, c. 349, § 3, ceased in terms to be in the class of goods, wares and merchandise which were permitted to be sold without a license. It is to be further noted that G. L. c. 101, which is similar in its terms to St. 1846, c. 244, "not only proscribes actual hawkers and pedlers, whose employment is that of travelling traders, and thus seem to refer to a business or habitual occupation; but it extends to all persons, doing the acts prescribed." *Commonwealth* v. *Ober*, 12 Cush. 493, 495. *Emert* v. *Missouri*, 156 U. S. 296, 307, 308. It follows that it is of no consequence that the defendants were not engaged in this pursuit of a trade or business; or that they sold the books and pamphlets without gain to themselves.

We find nothing in the history of the legislation in reference to the sale of goods, wares or merchandise by hawkers and pedlers to warrant the defendants' contention that the Legislature, in omitting the articles above indi-

cated, intended that they should not fall back into the operation of G. L. c. 101, § 14, but that they should be taken out altogether from the purview of the statute affecting hawkers and pedlers. In passing, attention may be given to the fact that by Res. 1928, c. 62, the Legislature created a special commission for the purpose of investigating "the general laws relative to hawkers and pedlers, and of recommending such changes in such general laws as may appear desirable and expedient," and that an examination of the final report of that commission shows that it recommended the omissions in fact made, and in connection therewith said: "Under present conditions it is felt that supervision is needed in the peddling of these articles, and no reason appears why the sale thereof should be permitted without a license." Senate No. 5 (1929) page 6.

It is to be further noted that it is not competent, relevant or material, when a statute has been violated, to show that the defendants had a good motive — in this case the dissemination of religious beliefs. *Commonwealth* v. *Plaisted*, 148 Mass. 375. *Reynolds* v. *United States*, 98 U. S. 145. *State* v. *White*, 64 N. H. 48. *Commonwealth* v. *Green*, 268 Mass. 585, 586.

It is settled law that States within their constitutional rights may regulate the sale, barter, or the offering for sale or barter, or the carrying for sale or barter, of goods, wares or merchandise, and impose penalties for the violations of such regulations. *Commonwealth* v. *Ober, supra.* *Emert* v. *Missouri, supra.* It is too clear for serious discussion or citation of authority that books and pamphlets, worldly or religious, are in their nature goods, wares or merchandise. Art. 1 of the Amendments to the Constitution of the United States and art. 11 of the Amendments to the Constitution of the Commonwealth of Massachusetts, which are relied on by the defendants, were not designed to prevent the adoption of reasonable rules and regulations concerning the sale of religious books and pamphlets, and no person, however earnest and sincere, can avail himself of those provisions as an authority to

violate rules and regulations which govern the disposition by sale or otherwise of books however classified.

We find no error in the denial of the motions that verdicts of not guilty be ordered, or of the motion "to order a verdict on the phase of the case referring to going from house to house"; nor was there error in the refusal to admit in evidence the offers of proof set out in paragraphs 1, 2, 3, 5, 6 and 7 of the offer or in the refusal to give requests for instructions numbered 1, 2, 3, 4, 5, 6 and 7; nor was there error in that portion of the charge wherein the judge said, in substance, "If you believe that these defendants have told you the truth, they should be found to be peddlers, provided they go from house to house."

*Exceptions overruled.*