## Reuben H. Donnelley Corporation v. City of Bellevue.

May 21, 1940.

A. M. Caldwell, Judge.

Walter K. Sibbald for appellant.
William J. Wise for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

An ordinance of the City of Bellevue levies license taxes upon many specified occupations and professions. It contains the following clause:

"Advertising. For distribution of samples, books, circulars, pamphlets, cards, hand bills, or other device, the sum of twenty-five ($25.00) Dollars per year, or.$1.00 per day, and but one person at a time allowed to operate under said license."

The ordinance makes it unlawful for any person or corporation to carry on the occupations described except that he or it first obtain a license as therein provided. A violation subjects the offender to a fine of not less than $2 nor more than $100 and costs of prosecution, or imprisonment for not less than 30 days, or both such fine and imprisonment. Each day's operation or practice is deemed a separate offense. It is further provided that upon the payment of the tax specified, the city clerk shall issue and deliver to "such licensed taxpayer" a certificate containing certain appropriate information.

The appellant, The Reuben H. Donnelley Corporation, an Ohio corporation, was convicted in the police court of Bellevue of a violation of the ordinance. On its appeal to the circuit court a fine of $100 was assessed against the company upon an agreed statement of facts. Without having obtained a license or having paid the prescribed tax, the appellant engaged in the business of distributing circulars at residences in Bellevue advertising the wares of a local druggist. It was not claimed the defendant had littered the streets or committed any nuisance, the prosecution being solely for a failure to obtain the license prescribed by the ordinance. The defense is that the provision of the ordinance offends the constitutional right of freedom of speech and press without abridgment, as established by the First Amendment, and the prohibition of any state abridging the privileges or immunities of citizens of the United States as contained in the Fourteenth Amendment of the Federal Constitution.

The appellant relies on Lovell v. Griffin, 303 U. S. 444, 58 S. Ct. 666, 668, 82 L. Ed. 949, holding unconstitutional an ordinance making unlawful, as being a nuisance, the practice of distributing "circulars, handbooks, advertising, or literature of any kind" without first obtaining written permission from the city. Pointing out that the ordinance "in its broad sweep" prohibited the distribution of pamphlets, magazines and periodicals, including religious tracts, such as were distributed by the appellant, the court held the ordinance to be invalid on its face. The element of censorship and restraint in the requirement of permission, irrespective of any worthy motive, violated the fundamental personal rights and liberties protected by the Federal Constitu-

tion. More recently the Supreme Court destroyed ordinances similar in character and effect which had been enacted by cities in California, Wisconsin, Massachusetts and New Jersey, the validity of which had been sustained in each case by the several state courts. Schneider v. State (Town of Irvington) 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. .... See also Hague v. Committee for Industrial Organization, 307 U. S. 496, 59 S. Ct. 954, 83 L. Ed. 1423; Thornhill v. State of Alabama, 60 S. Ct. 736, 84 L. Ed. .... Theretofore most of the state courts had regarded the enactment of such ordinances as being a legitimate exercise of municipal police power to regulate reasonably the use of streets and as not invading any constitutional right. Annotations, 22 A. L. R. 1484, 114 A. L. R. 1446.

There is, however, a clear distinction between the ordinances held by the Supreme Court to be abridgments of the right of free speech and press and the ordinance before us. It does not undertake either to prohibit or restrict the distribution of literature of any sort. It only imposes a tax upon the privilege of carrying on the business of advertising in a particular manner. Absent from the ordinance is any censorship of substance or form. No power of discrimination as between any person or class of citizens is reserved or exercised. The privilege of distributing advertising matter is available to any one paying the tax. True it is that a license is required. We construe the term, however, not in the sense of being a grant or permission but as descriptive of the tax and the document evidencing its payment. The penalty prescribed is not for distributing advertising matter but for exercising the privilege without paying the tax. Making it a misdemeanor not to pay the license fee does not affect is character as a tax. License Tax Cases, 5 Wall. 462, 72 U. S. 462, 18 L. Ed. 497; State v. Conlon, 65 Conn. 478, 33 A. 519, 31 L. R. A. 55, 48 Am. St. Rep. 227; Giragi v. Moore, 48 Ariz. 33, 58 P. (2d) 1249, 110 A. L. R. 314; Id., 49 Ariz. 74, 64 P. (2d) 819, 110 A. L. R. 320. The distinction between the power of a city to enact such an ordinance as that in the case at bar was recognized, we think, in Schneider v. State, supra, by the emphasis placed upon what the ordinances therein challenged purported to do and what they purported not to do.

In Grosjean v. American Press Company, 297 U.

S. 233, 56 S. Ct. 444, 449, 80 L. Ed. 660, a Louisiana statute imposing a tax on the gross income of certain classes of newspapers based upon circulation was held to be unconstitutional as abridging the freedom of the press. The opinion reflects an appreciation of the unusual political situation in that state at that time, well-known as contemporary history. The statute was regarded as being "a deliberate and calculated device" to limit the circulation of newspapers "with the plain purpose of penalizing the publishers and curtailing the circulation of a selected group of newspapers." Said the court:

> "The tax here involved is bad not because it takes money from the pockets of the appellees. If that were all, a wholly different question would be presented. It is bad because, in the light of its history and of its present setting, it is seen to be a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties."

The distinction between such an invidious statute and one imposing annual privilege taxes on various newspaper publishers measured by the amount of business and requiring that they obtain a license is clearly drawn in Giragi v. Moore, supra. Newspaper publishers were held not to be exempt from a general sales tax of that character on the idea of abridgment of the freedom of the press.

If the right of the state or a municipal subdivision merely to exact a reasonable license tax for the privilege of carrying on the business of distributing advertising matter, or even of publishing a newspaper, for private profit, be denied as an abridgment of freedom of speech or press, then there is a clash with the fundamental social and political philosophy and constitutional mandate of equality of right and equality of burden. The constitution is not to be construed as destroying itself. Its principles are of equal dignity and none must be so enforced as to nullify or substantially impair the other. Dick v. United States, 208 U. S. 340, 28 S. Ct. 399, 52 L. Ed. 520; Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596. The business of advertising possesses no virtue justifying immunity from the ordinary license or other taxes. Freedom of speech or publication does not authorize it.

We are of opinion the ordinance in the respect assailed is valid and applicable to the facts of the case.

Judgment affirmed.