McCALEB, Justice.
 

 The relator, Amos Teague, was charged in two affidavits with violations of Ordinance No. 50 of 1937 of the City of Shreveport in that on January 6 and January 20, 1942, “he did go upon private residences in the City of Shreveport without having been requested or invited so to do by the owner or occupant, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same.”
 

 Relator resisted the charges made against him on the grounds (1) that the ordinance of the City of Shreveport, when properly construed, did not apply to or include within its terms the acts which formed the basis of the complaints against him since he was an ordained minister of God preaching the gospel from house to house and (2) that, if the ordinance should be interpreted as applying to him, then it was unconstitutional, null and void being contrary to both the Federal and State Constitutions. Appropriate pleas raising these issues were filed by the relator.
 

 After a trial of the case in the City Court in Shreveport, relator-was found guilty and sentenced to pay a fine of $25 on each charge. He appealed from the judgment to the First Judicial District Court for the Parish of Caddo where, after a trial de novo, the conviction and sentence were affirmed. Whereupon, relator, invoking the supervisory jurisdiction of this Court, applied for writs of mandamus, prohibition and certiorari. The writs were granted and the case has been submitted to us for decision.
 

 The record of the proceedings in the courts below reveal the following facts:
 

 Relator is an ordained minister of a religious sect known as “Jehovah’s Wit
 
 *684
 
 nesses” and is a member of an organization called the “Watch Tower Bible and Tract Society”.
 

 On January 6 and 20, 1942, he was going from house to house in the City of Shreveport preaching the gospel, as he understood it, by means of his spoken word and also by playing various Biblical records on a phonograph with the approval of the householder. As an incident to his preachings, he was also distributing printed books, pamphlets and leaflets which set forth his views as to the meaning of the Biblical prophecies. The method of distribution of these printed publications was as follows: At the conclusion of his playing a phonograph record, relator would invite the householder to receive one or more of the books or pamphlets and to contribute a small sum to aid in printing similar literature. Whenever a householder did not desire to receive a book or booklet, relator left a small leaflet summarizing some part of the Biblical message which he preached. In at least two instances, he delivered a copy of one of the printed books and received from each of the householders a contribution of twenty-five cents. Relator admitted that he was offering and delivering this literature regularly in the City of Shreveport and elsewhere, and also that, in some cases, when householders were not in a position to make a money contribution and promised to read the literature carefully, he gave to such persons a book or pamphlet free of charge. Relator further testified that he received no commissions on sales made by him and that he did this work because he believed it was his God-given duty to do so.
 

 The main question in the case is whether, under the facts above set forth (which are not disputed), relator is guilty of violating the provisions of Ordinance No. SO of 1937 of the City of Shreveport. The acts prohibited by that Ordinance are found in Section 1 thereof which reads as follows:
 

 “The practice of going in and upon private residences in the City of Shreveport, Louisiana, by solicitors, peddlers, hawkers, or itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor.”
 

 It seems quite obvious to us from a mere reading of the above quoted section that the acts done by relator do not constitute a violation of the ordinance. Relator is neither a solicitor, peddler, hawker, itinerant merchant or transient vendor of merchandise. He is admittedly an ordained minister of a religious sect, who, instead of voicing his views from a pulpit, travels as an itinerant preacher from house to house.
 

 The fact that relator, as an incident to his preachings, attempts to sell literature which is conformable with his religious beliefs, does not alter the nature of his profession or make him a solicitor, hawker or itinerant merchant. Relator does not insist upon the payment of a contribution.in consideration of the delivery of the printed
 
 *686
 
 pamphlets or other literature he distributes. He testified that he tries to prevail upon the householder to give a contribution, but that, in case the householder is unwilling or unable to do so, he will nevertheless deliver the literature provided the householder promises to read it. In addition, relator states that, when contributions are made, he receives no part of them as a commission or otherwise and that such contributions are devoted exclusively toward the cost of the publication of similar literature.
 

 It is clear to us, from an examination of the ordinance under consideration, that the purpose for which it was enacted was to protect the householders of Shreveport from annoyance and disturbance by solicitors, peddlers, etc., who are engaged in the business of selling merchandise for their livelihood. Relator, cannot, by any stretch of judicial interpretation, be placed in the category' of a peddler, hawker or solicitor since it is perfectly plain that he did not enter the premises of any of the householders in Shreveport “for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, * *
 

 To hold otherwise, we would be compelled to attribute to the City Council of Shreveport the intention of declaring that the visitation into homes (without previous invitations) by priests and'ministers of all religious denominations, accompanied by the sale of Biblical literature, constitutes a nuisance and a misdemeanor. This we will not do.
 

 This case is not unlike our recent decision in State ex rel. Semansky v. Stark, 196 La. 307, 199 So. 129, where we found that an ordained preacher of the “Jehovah’s Witnesses” was not a peddler of goods within the meaning of Section 16 of Act 15 of the Third Extra Session of 1934, and hence was not liable for a peddler’s license.
 

 The respondent judge attempts to distinguish the Semansky case from the case at bar on the ground that the decision in the former was based on the theory that the statute providing for the payment of licenses by peddlers was enacted for the protection of merchants having a fixed place of business and did not apply to members of the “Jehovah’s'Witnesses” since they were not competing with those merchants. While it is true that we observed in that matter that the section of the license tax law respecting peddlers was passed for the purpose of protecting mercantile establishments and for that reason it was manifestly inapplicable ■ to persons not in competition with such establishments, that is not the sole ground upon which our conclusion rested. On the contrary, a reading of the opinion will disclose that we found that the mere fact that the plaintiff, an itinerant preacher, was selling literature fostering the doctrines he was professing, did not make him a peddler as defined by the license tax law.
 

 The same deduction is applicable to the case at bar. The fact that the relator preaches his religious views from house to house and distributes literature in support of his beliefs, for which he obtains contributions, does not render him amenable
 
 *688
 
 to the provisions of an ordinance which forbids' the visitation (without request) in and upon private residences by solicitors, peddlers, etc., for the purpose of soliciting orders for the sale of goods or for disposing of or peddling the same.
 

 In view of our conclusion that the acts committed by relator are not prohibited by the City Ordinance, it is unnecessary for us to discuss his contention that the ordinance, if found applicable, is unconstitutional.
 

 For the reasons assigned, the alternative writs heretofore issued are maintained and perpetuated; the judgment of conviction and sentence is reversed and set aside and the relator is now ordered discharged.
 

 O’NIELL, C. J., concurs in the decree.