## Seevers. v. City of Somerset.

Oct. 29, 1943.

596

H. C. Kennedy and Victor F. Schmidt for appellant.

R. C. Tartar and C. L. Tartar for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellant, Anna Seevers, a regularly ordained minister of the religious sect, Jehovah's Witnesses, was tried in the Pulaski Circuit Court on a warrant charging her with the violation of an ordinance of the City of Somerset which forbids peddling of merchandise or literature within the city without a license. She was convicted, her punishment fixed at a fine of $50, and upon her motion for an appeal she asks that the judgment be reversed on three grounds: 1. The ordinance in question does not apply to her. 2. It violates sections 1, 5 and 8 of the Kentucky Constitution, and the first and fourteenth amendments of the Federal Constitution guaranteeing freedom of religion, speech and press. 3. It violates sec. 181 of the Kentucky Constitution and the fourteenth amendment of the Federal Constitution in that it lays a tax that is discriminatory and confiscatory.

The attacked ordinance in substance provides that it shall be unlawful for any person, firm or corporation to engage in the business of an itinerant merchant or of a peddler within the city without first procuring a license at a cost of $7.50 per day, $30 per week or $100 per year. The ordinance defines an "itinerant merchant" as "any transient person who shall engage temporarily in selling or offering for sale any goods, wares or merchandise or literature * * *." It defines a "peddler" as "any person who goes from house to house, or from place to place in the City of Somerset, Ky., selling or taking orders for, or selling coupons for the procurement of, or offering to sell or take orders for goods, wares, merchandise or literature."

The evidence shows the appellant has been an ordained minister of Jehovah's Witnesses for more than twenty years and when arrested on March 11, 1942, she had with her a card so showing. She and several other members of her sect came to Somerset on January 18, 1942, as she testified, "under the command of Almighty God as set forth in Isaiah 61-1 and 2, to preach the gospel to all mankind."

Her manner of preaching was to go from door to door in the City of Somerset and play a record on a

phonograph giving certain of the views of Jehovah's Witnesses on religion. The Watch Tower Bible & Tract Society published certain religious books and tracts and appellant in calling upon persons in their homes would offer them for sale. One of the religious publications was a cloth bound volume of 368 pages bearing the title "Children," which she purchased from the Watch Tower at five cents and offered for sale at twenty-five cents. A pamphlet of thirty pages entitled "End of Axis Powers," a religious tract, she bought from the same publisher for one and one-half cents and offered free with the book. If persons upon whom she called desired any of her publications and were financially unable to buy them, the publication was donated by appellant.

The facts in this record cannot be distinguished from those appearing in Murdock v. Com. of Pennsylvania, etc., 319 U. S. 105, 166, 63 S. Ct. 870, 882, 891, 87 L. Ed. —, and the ordinance here is for all practical purposes the same as the one claimed to have been violated there. In the Murdock case the United. States Supreme Court held that one distributing this same character of literature was engaged in religious and not commercial activity and the ordinance forbidding commercial peddling had no application; that if it were applicable, it ran afoul both the State and the Federal Constitutions guaranteeing freedom of religion and was unconstitutional.

We feel constrained to follow the decision of the United States Supreme Court in this matter regardless of what our independent views might be. Therefore, it is unnecessary for us to extend this opinion and we refer the reader to the Murdock case; also to Jones v. City of Opelika, 319 U. S. 103, 63 S. Ct. 890, 87 L. Ed.— (where a rehearing was granted and the court adopted the reasoning of the Murdock opinion); Douglas v. City of Jeannette, 319 U. S. 157, 63 S. Ct. 877, 87 L. Ed. —, and Martin v. City of Struthers, 319 U. S. 141, 63 S. Ct. 862, 87 L. Ed —, where a full discussion of the views of the various Justices of the Supreme Court on the question appear.

Having reached this conclusion, it becomes unnecessary to determine whether or not the ordinance is discriminatory or confiscatory. The motion for an appeal is sustained, and the judgment is reversed for proceedings consistent herewith.

The whole Court sitting.

Judge Sims concurring.

It appears to me from the majority opinion that this court feels compelled to follow the decision of the United States Supreme Court in the Murdock case, but if it had been left to an independent consideration it would have reached a different conclusion. Of course, I realize that in the case at bar this court is bound by the decision of the Supreme Court, but I feel that the Murdock opinion is correct—so much so that had it not been handed down before this case reached us, I would have arrived independently at the conclusion therein expressed. Hence it is not amiss to write this concurring opinion.

In the month of March appellant distributed 36 books, 118 tracts and 37 magazines for which she received the sum of $9. In February she received $6.20, and the money she received for all the time she was in Somerset averaged about fifty cents per day. The testimony upon which she was convicted was that of Mrs. Clifford Early to the effect that appellant came to her home, "played a message on her victrola * * * and I gave her twenty-five cents for the book." She never returned to the witness' home and there is no complaint that the publications appellant was delivering were scurrilous or that her method of delivery or her conduct was offensive. The warrant charged, and the evidence discloses, the sole offense committed was that appellant distributed religious publications without obtaining a license as provided by the ordinance and accepted any money offered her for same.

It is clear to my mind that this ordinance has no application to the activities in which appellant was engaged at the time of her arrest. The ordinance lays a license fee to be paid by an itinerant merchant or peddler for selling or offering for sale merchandise or literature upon the streets or by going from house to house in the city. It is true she went from one house to another ringing doorbells and when her summons was answered she played her phonograph and offered her book or pamphlet for which she received twenty-five cents, five cents or nothing. But the facts in this record could not make her a peddler because she was not selling her literature for private gain but according to her light and belief she was following the example of St. Paul, "teach-

ing publickly and from house to house." Acts 20-20. I would call her a colporteur rather than a peddler.

The sect to which appellant belongs, Jehovah's Witnesses, take literally God's command "Go ye into all the world, and preach the gospel to every creature." She testified that her preaching was done by the aid of the phonograph and by the written distribution of "God's word." To some this may be a strange manner in which "to spread the gospel." But with this I am not concerned since there were no obscene or abusive words used which were calculated to excite retaliation with which the police power of the state is free to deal. See Lawson v. Com., 291 Ky. 437, 164 S. W. (2d) 972, for a discussion of the authority of the police power to stop obscene, vulgar or dangerous conduct on the part of religious zealots without abridging freedom of religious worship. However strange this form of "preaching" may seem to those accustomed to receive the holy word from the pulpit, it occurs to most persons when they stop to think that almost since the printing press was invented colporteurs have been engaged in evangelizing the world by the distribution of religious tracts. As was so forcefully written by Mr. Justice Douglas in Murdock v. Com. of Pennsylvania, 319 U. S. 105, 166, 63 S. Ct. 870, 882, 891, 87 L. Ed. —, —: "This form of religious activity occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits. It has the same claim to protection as the more orthodox and conventional exercises of religion. It also has the same claim as the others to the guarantees of freedom of speech and freedom of the press."

The fact that appellant sold rather than donated this religious literature does not convert her evangelism into a commercial transaction. The sale of her books and pamphlets was incidental to her main purpose—the spreading of her religious belief. My view that appellant in distributing this literature was engaged in religious and not commercial activity, hence the ordinance forbidding commercial peddling without license has no application, follows the rule as laid down by courts of many jurisdictions. Murdock v. Com. of Pennsylvania, 319 U. S. 105, 166, 63 S. Ct. 870, 882, 891, 87 L. Ed. ...; Schneider v. State, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155; City of Cincinnati v. Mosier, 61 Ohio App. 81, 22 N. E. (2d) 418; Semansky v. Stark, 196 La. 307, 199 So.

129; City of Shreveport v. Teague, 200 La. 679, 8 So. (2d) 640; State v. Meredith, 197 S. C. 351, 15 S. E. (2d) 678; Thomas v. City of Atlanta, 59 Ga. App. 520, 1 S. E. (2d) 598; State v. Richardson, 192 N. H. 178, 27 A. (2d) 94; State v. Mead, 230 Iowa 1217, 300 N. W. 523.

If the ordinance should be considered as applying to the transaction in which appellant was engaged, it contravened both the State and Federal Constitutions guaranteeing freedom of religion and must fall. God created man in His image and from that time hence man has been busy creating God in his image and prescribing dogmas and rituals by which God may be worshipped. The authors of the Federal Constitution knew how prone men are to impose their religious beliefs upon their brethren and to tolerate no other form of worshipping God except their own. Therefore in their wisdom, they wrote in the First Amendment; "Congress shall make no laws respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press * * *". The Fourteenth Amendment made the First applicable to the states, and Sections 1, 5 and 8 of our Constitution guarantee freedom of religion. Being thus guaranteed by both the State and Federal Constitutions, no tax, as was attempted by the ordinance in question, may be imposed for the exercise or enjoyment of religious freedom, a privilege constitutionally guaranteed. Murdock v. Com. of Pennsylvania, 319 U. S. 105, 166, 63 S. Ct. 870, 882, 891, 87 L. Ed. . . . . If the tax laid by the ordinance before us were allowed to stand, various cities in the several states could suppress not only the dissemination of new religious ideas, but also religious minorities. Ordinances quite similar to the one attacked have been recently pronounced by the Supreme Court of the United States as being unconstitutional because of their abridgment of religious freedom. I am in thorough accord with the views of the majority of that court and, rather than reiterate what was there written, I refer the reader to Murdock v. Com., and other authorities cited in the majority opinion of this court.

There is no doubt that the city has authority to levy a license tax on peddlers and on those distributing advertisements, pamphlets or hand-bills. Hays v. Com., 107 Ky. 655, 55 S. W. 425, 21 Ky. Law Rep. 1418; Donnelley Corp. v. City of Bellevue, 283 Ky. 152, 140 S. W. (2d) 1024; see annotations in 22 A. L. R. 1484 and 105 A. L. R. 1051 and 69 A. L. R. 1097. At times it will be difficult

to determine whether the practice indulged in is religious or commercial and the distinction in such a case is all important. But on the facts presented in this record I have no hesitancy in determining that appellant's activities were religious as distinguished from a commercial nature, therefore the ordinance could not tax them.

I agree with the conclusions reached by a majority of my brethren, but rather than being forced to that decision by the Supreme Court in the Murdock case, I freely, voluntarily and even joyously follow its holding that religious freedom prevails in this land although to me the ritual practiced appears unorthodox, to say the least, as perhaps it does to the vast majority of our citizens.

Judges Ratliff and Tilford join in this concurring opinion.