## Ladd v. Commonwealth.

October 24, 1950.

Ira D. Smith, Judge.

Hubert Meredith for appellant.

W. E. Rogers, Jr., John T. King, A. E. Funk, Attorney General, H. D. Reed, Jr., Assistant Attorney General, for appellee.

JUDGE KNIGHT—Affirming.

This appeal is prosecuted from a judgment of the Christian Circuit Court revoking the license of appellant, Rev. C. A. Ladd, to perform marriage ceremonies. The proceedings for the revocation of appellant's license were begun in the Christian County Court when the judge of that court served notice on him to appear in the county court on November 10, 1948, to show cause why his license to perform marriages should not be revoked. The county judge disqualified himself and, by

agreement of the parties, Hon. W. R. Clark of the Hopkinsville bar was agreed on to try the case. After a hearing held on November 17, 1948, at which hearing the testimony was transcribed, Special Judge Clark entered an order annulling and revoking the license heretofore issued to appellant and he appealed to the circuit court from the judgment of the county court. In the circuit court the case was submitted on the record, which had been brought up from the county court, and on briefs of counsel, and on April 1, 1949, the judge of the Christian Circuit Court entered a judgment in which he "sustained and confirmed the judgment (of the county court) cancelling defendant's (Rev. Ladd's) license." This appeal is prosecuted from the latter judgment.

## What Proof Shows.

The evidence produced at the hearing, which resulted in revoking his license, was in substance as follows: It was shown by the records of the county clerk of Christian County that appellant and his surety executed a bond in the penal sum of $500 by which he covenanted and agreed not to violate the laws of this state concerning marriage, whereupon he was issued a license on May 3, 1930. It was shown by the records of the circuit clerk that on June 11, 1946, the grand jury of Christian County returned three indictments against appellant charging him with unlawfully soliciting marriages. On September 24, 1946, on motion of the commonwealth's attorney, each of the above indictments was ordered dismissed on condition that defendant remain away from the county clerk's office. It was further shown by the records that on June 3, 1947, and October 18, 1948, appellant appealed to the circuit court from judgments of conviction in the quarterly court and it was stipulated that both these convictions were on charges of soliciting marriages. In one of these cases the appeal was dismissed and the judgment sustained. In the other case he paid the fine of 1 cent and costs as adjudged by the lower court. It was shown by the records of the clerk of the quarterly court that on June 12, 1946, appellant was charged with soliciting a marriage performance but this was dismissed on motion of the county attorney. On February 26, 1947, he was tried and found guilty on a charge of using abusive language to provoke assault and was fined $20 and costs which were paid. On February 10, 1948, he was tried before a jury,

pleaded guilty to a charge of breach of the peace and was fined $25 and costs which he paid. On July 6, 1948, he was tried before a jury on the charge of soliciting a marriage performance and was found guilty and was fined $50 and costs which were later paid.

At the hearing only appellant testified in his own defense and his testimony was in substance that he is 73 years old and has been a regularly ordained minister of the Baptist Church for the past fifty years; that it is his belief that only a minister of the gospel has authority to perform a marriage ceremony and that it is not scriptural for one possessing only temporal authority to perform marriages; that he thought and felt that he was carrying out his religious duty in soliciting the marriages of which he was accused rather than allowing them to be performed by some civil official about the court house; that in the exercise of his right to solicit and perform marriages under his license, he did not do anything except what he thought was his religious duty.

### The Law of the Case.

The authority under which the hearing above referred to was held is KRS 402.060 which provides that no minister shall solemnize marriages until he has obtained a license therefor from the county court of the county in which he resides, upon satisfying the court that he is a man of good moral character and giving bond with good surety not to violate the law of this state concerning marriages. The section further provides that "Any such license may be annulled by any county court, after notice to the person holding the license." The particular section of the statutes violated by appellant, which was the basis of the annullment of his license, is KRS 402.090 (3), which provides: "No person authorized to solemnize marriage shall solicit, persuade, entice, direct or induce any persons to come before him to be married."

We think the evidence fully establishes that appellant was guilty of a violation of the statute last above referred to. In fact he makes no denial of that but seeks to justify his actions by asserting his belief that marriages should not be performed by civilian authorities, such as is often done around a court house by magistrates and the county judge, but that instead they

should be performed by a minister. Consequently he solicited prospective brides and grooms to come to him to be married, for which he received fees, to save them from the fate of marriage which, under his religious views, was not authorized.

As the first ground for reversal, appellant contends that KRS 402.060, which provides for annullment after notice to the person holding a license, is unconstitutional because it is in violation of section 2 of the Constitution of Kentucky which provides that arbitrary power over lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority.

It is appellant's contention that the power attempted to be conferred on a county judge by that portion of the statute quoted is an arbitrary one because no guides were provided, no standards were set up, no facts were required to be found or established and no restraint or restrictions or definitions of the use of the power thus conferred appear in the assailed portion of the statute. In support of this contention he cites and relies on such cases as McCown v. Gose, 244 Ky. 402, 51 S.W.2d 251; Slaughter v. Post, 214 Ky. 175, 282 S.W. 1091; Rawles v. Jenkins, 212 Ky. 287, 279 S.W. 350, 351; City of Jackson v. Murray-Reed-Slone & Co., 297 Ky. 1, 178, S.W.2d 847; City of Louisville v. Kuhn, 284 Ky. 684, 145 S.W.2d 851; and others of a similar nature. These are cases in which an ordinance or the powers sought to be exercised by some administrative agency were stricken down because of arbitrary provisions therein affecting property rights or because no guides or standards were set up in the legislation creating an administrative agency under which it was to carry out the purposes for which it was created. All of these cases involved a claimed imposition on property rights. We do not regard the right which the statute gives to a minister to perform a marriage ceremony under certain conditions as being a property right such as was involved in the cited cases. As was well said in appellee's brief, ''To consider the performance of marriage by a minister or a judge as something of economic value to be bargained and sold, reduces that solemn right to the status of fish market haggling, upsets all society's views of this institution and rips the shrouds

of dignity from the backs of the officers of this state who have been commissioned by it to bear official witness to the marital contract.'' While it is true that a minister or other official is generally given a small fee for performing a marriage ceremony, such fee is not authorized or required by any law and could not be forced as a condition to the performance of marriage under existing law.

In this state, a minister who performs a marriage ceremony may be said to do so in two capacities, one as a representative of his church and the other as an officer of the state, but it is the latter that gives the marriage the status recognized by law. As it is stated in 45 Am.Jur. 742, Religious Societies, Sec. 30: ''A pastor is not an officer of a religious corporation but in the administration of the religious ceremony, is a public civil officer, and in relation to the subject is not at all to be distinguished from a judge of the superior or circuit court or a justice of the peace in the performance of the same duty.''

There are some religious societies, churches, or denominations which do not recognize a civil ceremony performed by civilian authorities, but require that the ceremony be performed by its ministers or priests, not in their capacities as civil officers, but in their religious capacities, and regard any cohabitation by any other than the religious ceremony as adulterous. Likewise, the state does not recognize the religious ceremony alone unless that ceremony is performed by a minister who has also become a civil official for the purpose of performing a marriage ceremony and has met the regulations which the state law requires as a condition precedent to his right to perform the marriage ceremony as a representative of the state. This includes the execution of a bond or covenant to the state that he will not violate the laws of the state concerning marriage. In the same statute which gives the minister the right to perform a marriage ceremony as an official of the state, at least for that purpose, it provides that his authority or license to do so may be annulled or revoked by the same arm of the government which granted it, to wit the county court. It is probable that this could be done, without hearing, at any time, upon notice, by the appointing officer under certain conditions, John-

son v. Laffoon, 257 Ky. 156, 77 S.W.2d 345, a question unnecessary for us to decide. Here we have a case in which it is charged that appellant has violated "a law of this state concerning marriage," to wit KRS 402.090, which forbids solicitation by any person to induce persons to come before him to be married and, after a hearing, he was found guilty of violating that law. We fail to see wherein this section of the statutes violates section 2 of the Kentucky Constitution. Nor do we see that it was unconstitutionally applied to appellant within the meaning of the 5th and 14th amendments to the Constitution of the United States in that he was denied due process of law, as contended by appellant. When appellant was notified to appear in the county court to show cause why his license should not be revoked, he did appear and was represented by able counsel who moved to quash the notice and dismiss the proceedings. The special judge before whom the case was to be tried said he would entertain a motion to make more specific and for a bill of particulars and a continuance for preparation of his defense, to which the prosecution agreed. Counsel for defendant refused to make such motion and filed a response after which the case proceeded to trial with the result heretofore indicated. We think this met all requirements of due process under a show cause rule issue against him and that he waived any right for more specific charges against him by not accepting the offer of the prosecution to grant it.

The principal ground relied on for reversal by appellant is that KRS 402.090, which forbids solicitation by a person to induce persons to come before him to be married, is unconstitutional. He argues that it deprives a minister of valuable secular and religious rights and that such rights and privileges cannot be curtailed or interfered with by a state except in the necessary exercise of the police power. He contends that a preacher's solicitation of marriages in no way endangers the public health, public peace or the public welfare, or good order of a community. We think it cannot be said that open solicitation by a preacher or other official in public places, such as in or near a court house where couples come to obtain a license, is not calculated to disturb the public peace, the public welfare or good order of a community. This is evident to

anyone who has witnessed such solicitation in and around a "Gretna Green" where many couples come for quick performance of hasty marriages. This condition has within it such potentialities for interference with the public welfare as justified the law making body of this state in enacting the legislation to prohibit such activities and we do not think it violates any provision of the constitution. The state has no right to interfere with the religious aspects of the marriage ceremony but it does have the right to regulate its civil aspects and it does have the right to say to a minister to whom it grants the right to perform the marriage ceremony that it shall be done under reasonable limitations and restraints which the state may impose. We regard the forbidding of solicitation as such reasonable restraint.

It is further contended by appellant that he conceived it to be his Christian duty to inform people that marriages are sacred and that the ceremony should be performed by a regular minister of the gospel and that he felt that he was preaching the gospel in so doing. If the statute sought to prevent his preaching, teaching, or talking that doctrine, it would unquestionably be unconstitutional as an infringement on his right of free speech and as an interference with his right to promulgate his religious views. But it does not do that. He could go in any church in Hopkinsville or elsewhere or go to any street corner in Hopkinsville or elsewhere and proclaim his belief that marriages should only be performed by a minister of the gospel and that a marriage by a civilian official is unscriptural, and his right to do so could not be questioned. Any attempt at such interference with the promulgation of his religious views would be stricken down. Seevers v. City of Somerset, 295 Ky. 595, 175 S.W.2d 18; Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292. But when he "solicits, persuades, entices, directs or induces any persons to come before *him* to be married", and for which he may and generally does receive a fee, the question loses its religious aspects and becomes a temporal matter in which he hopes to make a monetary gain, and becomes a matter for proper regulation by the state.

Wherefore the judgment is affirmed.