360 P.2d 987

In the Matter of the Death of Leon
DUNCAN.

Mary Alice DUNCAN, Surviving Widow,
Plaintiff-Appellant,

v.

JACOBSEN CONSTRUCTION CO., and S. N.
Jacobsen, a Joint Venture, Employer, and
Pacific Employers Insurance Company,
Surety, Defendants-Respondents.

No. 8979.

Supreme Court of Idaho.

April 6, 1961.

Jeppesen & Jeppesen, Boise, for appellant.

Coughlan & Imhoff, Boise, for respondents.

SMITH, Justice.

Leon Duncan, a resident of Kaysville, Utah, died January 8, 1958, as the result of a severe personal injury received that

date, caused by an accident arising out of and in the course of his temporary employment in Idaho with respondent employer, insured by respondent surety.

Appellant surviving widow made due claim for compensation death benefits. Thereupon appellant and respondents entered into an agreement for payment of workmen's compensation death benefits, which the Industrial Accident Board duly approved, and entered an award accordingly. Respondents paid appellant compensation for the period from January 8, 1958, to May 12, 1959, and then discontinued payment on the ground of appellant's alleged remarriage, May 12, 1959. Appellant seeks an order compelling continuance of compensation payments.

On May 12, 1959, appellant, still a resident of Kaysville, Utah, and one Fred R. Pierce, a resident of Salt Lake City, Utah, who represented to appellant that "his divorce was final," were allegedly married at Ely, Nevada, by an official empowered to perform ceremonial marriages. The next day appellant and Pierce returned to Kaysville, Utah, where they resided continuously, holding themselves out as husband and wife, until during October, 1959, when they separated.

Pierce, previously married to one Jenny Pierce, was awarded a decree of divorce April 21, 1959, by the district court of Salt Lake County, Utah (Civil Case No. 11561), the decree reciting:

"That the plaintiff [Fred R. Pierce] be and he is hereby awarded a decree of divorce from the defendant [Jenny Pierce] * * *. That the said decree of divorce shall not become absolute and final until the expiration of three months from the entry thereof, and then shall become absolute and final unless proceedings for review are pending; or the court before the expiration of said time, to wit three months, of its own motion, or upon application of any party, whether interested or not, otherwise orders."

The decree became absolute July 21, 1959.

During November, 1959, appellant brought an action in the Salt Lake County, Utah, district court (Civil Case No. 123277), to annul her purported marriage to Pierce. The court, having jurisdiction of the parties and the subject matter, after due proceedings, on November 19, 1959, found that at the time of the marriage ceremony on May 12, 1959, Fred R. Pierce was still married to Jenny Pierce, and that his purported marriage to appellant was void; the court then entered its judgment annulling such marriage and decreeing it null and void ab initio.

August 15, 1960, appellant filed her petition with the Industrial Accident Board

seeking reinstatement of compensation payments; she alleged cessation of compensation payments because of her purported marriage to Pierce on May 12, 1959; their continued residence in Utah, until their separation during October, 1959; the action in Utah wherein the court adjudged the purported marriage null and void ab initio on the ground that at the time of such marriage Pierce was a married man, and that the laws of Utah prohibit common-law marriages.

Respondents by answer denied the invalidity of appellant's marriage to Pierce, and asserted their right to terminate compensation payments under the provisions of I.C. § 72–303, which provide that compensation shall be payable "to a widow, until death or remarriage, but in no case to exceed 400 weeks." Respondents affirmatively alleged that any purported annulment of the marriage of appellant and Pierce by the Salt Lake County, Utah, district court in Civil Case No. 123277 is not binding upon respondents by virtue of I.C. § 32–505.

Appellant submitted proof relating to the law of the State of Utah as follows:

(a) Utah Code Ann.1943, § 40–1–2, now 1953, § 30–1–2:

"Marriages prohibited and void. —The following marriages are prohibited and declared void:

    *    *    *    *    *    *

"(2) When there is a husband or wife living from whom the person marrying has not been divorced.

"(3) When not solemnized by an authorized person, except as provided in section 30–1–5.

    *    *    *    *    *    *

"(7) Between a divorced person and any person other than the one from whom the divorce was secured until the divorce decree becomes absolute, and, if an appeal is taken, until after the affirmance of the decree."

(b) Utah Code Ann. 1953, § 30–1–5:

"No marriage solemnized before any person professing to have authority therefor shall be invalid for want of such authority, if consummated in the belief of the parties or either of them that he had such authority and that they have been lawfully married."

(c) Utah Code Ann. 1953, § 30–3–6, amended Utah Laws 1957, ch. 55, § 1:

"Interlocutory decree.—If after the hearing of any divorce cause the court is of the opinion that the divorce ought to be granted to either person, a decree shall be entered granting to such person a divorce; but the decree shall specifically provide that it shall not become absolute until the expiration of three months from the date of its entry."

(d) Utah Code Ann. 1953, § 30–3–7, amended Utah Laws 1957, ch. 55, § 1:

"When decree becomes absolute.— The decree of divorce shall become absolute at the expiration of three months from the entry thereof, unless an appeal or other proceedings for review are pending, or the court before the expiration of said period for sufficient cause upon its own motion or upon the application of any person, whether interested or not, otherwise orders."

(e) Proof of Utah's case law as expressed by the Supreme Court of Utah, In re Vetas' Estate, 110 Utah 187, 170 P.2d 183, interpreting the aforesaid statutory law.

The Board, upon hearing the matter, entered its order November 10, 1960, denying relief to appellant, from which order appellant perfected an appeal.

Appellant by her assignments asserts that the Board erred in grounding its refusal to reinstate her compensation death benefit payments on her purported marriage to Pierce on May 12, 1959 (citing I.C. § 72–303):

The Board found that the Utah court entered the interlocutory decree of divorce April 21, 1959, which, the court decreed, "shall not become absolute and final until the expiration of three months from the entry thereof;" and which became absolute and final on July 21, 1959.

■ The evidence, being undisputed, may be reviewed as a matter of law to determine its legal sufficiency to sustain the order of the Board. If the order is clearly unsupported as a matter of law, it is within the province of this Court to set it aside. Idaho Const. Art. V, § 9; I.C. § 72–609; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089; Larson v. State, 79 Idaho 446, 320 P.2d 763; Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079.

■ One who asserts the invalidity of a marriage must assume the burden of proof of such invalidity by clear and convincing evidence. Lea v. Galbraith, 64 Idaho 724, 137 P.2d 320; Thomey v. Thomey, 67 Idaho 393, 181 P.2d 777.

■ In Idaho a marriage is dissolved only by death of one of the parties or by the judgment of a court of competent jurisdiction declaring a divorce of the parties. I.C. § 32–601; Newell v. Newell, 77 Idaho 355, 293 P.2d 663, certiorari denied 352 U. S. 871, 77 S.Ct. 95, 1 L.Ed.2d 76. The same rule attains in the State of Utah. Anderson v. Anderson, 121 Utah 237, 240 P.2d 966.

■ The legislature of each state has the power to control and to regulate marriages within its jurisdiction. This includes the power to regulate the qualifications of the contracting parties and the proceed-

ings essential to constitute a marriage. 55 C.J.S. Marriage § 2, p. 809; Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412; Fuqua v. Fuqua, 268 Ala. 127, 104 So.2d 925; McClure, on Behalf of Caruthers v. Donovan, 33 Cal.2d 717, 205 P.2d 17; Beeler v. Beeler, 124 Cal.App.2d 679, 268 P.2d 1074; Ladd v. Commonwealth, 313 Ky. 754, 233 S.W.2d 517; Henderson v. Henderson, 199 Md. 449, 87 A.2d 403.

■ A state may declare what marriages it will recognize as valid, no matter where performed, and a claimed or purported marriage may be declared void when it is contrary to the positive law of the state of domicile of the parties. 55 C.J.S. Marriage § 4, p. 814; 35 Am.Jur., Marriage, § 172, p. 287; In re Takahashi's Estate, 113 Mont. 490, 129 P.2d 217; Miller v. Lucks, 203 Miss. 824, 36 So.2d 140, 3 A.L.R.2d 236; Davis v. Seller, 329 Mass. 385, 108 N.E.2d 656; Beddow v. Beddow, Ky., 257 S.W.2d 45; First National Bank in Grand Forks v. North Dakota Work. Comp. B., N.D., 68 N.W.2d 661.

The laws of the State of Utah, proven in evidence, prohibit marriage during the interlocutory period, which must expire before a decree of divorce becomes absolute, and prohibit marriage not solemnized; and declare any such attempted marriage as void. Utah Code Ann. 1953, § 30–1–2, § 30–3–6, and § 30–3–7 as amended Utah Laws

1957, ch. 55, § 1; Restatement, Conflict of Laws, § 132, p. 197; Sanders v. Industrial Commission, 64 Utah 372, 230 P. 1026; Schurler v. Industrial Commission, 86 Utah 284, 43 P.2d 696, 100 A.L.R. 1085; In re Vetas' Estate, 110 Utah 187, 170 P.2d 183; Anderson v. Anderson, 121 Utah 237, 240 P.2d 966; Cahoon v. Pelton, 9 Utah 2d 224, 342 P.2d 94; Popp v. Roth, 9 Utah 2d 96, 338 P.2d 123.

■ A purported marriage, void for any reason, is "subject to both direct and collateral attack, by anyone, at any time, in any court or in any proceeding in which the fact of marriage is material." 35 Am. Jur., Marriage, § 172, p. 287; 55 C.J.S. Marriage § 35, p. 875; First National Bank in Grand Forks v. North Dakota Work. Comp. B., N.D., 68 N.W.2d 661; Simpson v. Neely, Tex.Civ.App., 221 S.W.2d 303; Alexander v. Kuykendall, 192 Va. 8, 63 S.E.2d 746; In re Romano's Estate, 40 Wash.2d 796, 246 P.2d 501; Faivre v. Faivre, 182 Pa.Super. 365, 128 A.2d 139.

■ A judgment of a sister state in a divorce action is entitled to full faith and credit. U.S.Const. Art. IV, § 1, Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R. 2d 1355; Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 82 L.Ed. 1577, 157 A.L.R. 1366; Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794.

The authenticated records of the district court of Salt Lake County, Utah, in its Civil Cases Nos. 11561 and 123277, were admissible in evidence and entitled to the same faith and credit as in the courts of the sister state of Utah. U.S.Const. Art. IV, § 1; Stafford v. Field, 70 Idaho 331, 218 P.2d 338; 50 C.J.S. Judgments § 891, p. 492.

Judicial opinions of a court of last resort of a sister state are admissible as evidence of the case law of such state, and may be proved by production of law reports containing the cases adjudicated by such court. 20 Am.Jur., Evidence, § 1020, p. 859; 32 C.J.S. Evidence § 722b, p. 632; Madison v. Robinson, 95 Fla. 321, 116 So. 31; Columbia Weighing Mach. Co. v. Rhem, 164 S.C. 376, 162 S.E. 427.

The record before us shows that the district court of Salt Lake County, Utah, in appellant's annulment suit, Civil Case No. 123277, obtained jurisdiction of defendant Pierce, and found that, at the time of his purported marriage to appellant, he was still married to Jenny Pierce; hence the only two possible means by which the marriage of Fred R. Pierce with Jenny Pierce could have been dissolved—by death or by divorce—were disproved by clear and convincing evidence.

Respondents contend that the "purported annulment of the marriage between claim-ant [appellant] and Fred Pierce * * * is not binding upon the defendants [respondents] herein by virtue of Idaho Code 32–505," which reads:

"A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them."

Respondents' assertion cannot prevail because:

First, respondents cannot be permitted extraterritorial application of I. C. § 32–505 to the decree of annulment, for that decree must be measured by the law of Utah and not by the law of this state. Statutes are intended to apply and be confined in their operation to persons, properties, and rights which are within the territorial jurisdiction of the law-making power. One who claims the benefit of such law, for either person or property, beyond the territorial jurisdiction of the law-making power must rest such claim upon a statute granting such extraterritorial right. I.C. § 32–505 does not provide for extraterritorial application. In Walbridge v. Robinson, 22 Idaho 236, 246, 125 P. 812, 815, 43 L.R.A.,N.S., 240, wherein an attempt was made to give a statute extraterritorial effect, this Court stated:

" 'The presumption is always against any intention to attempt giving to the act an exterritorial [sic] operation and

effect.' Endlich on Interpretation of Statutes, p. 233, announces the same principle. Cooley on Constitutional Limitations (7th Ed.) p. 176, says:

"The legislative authority of every state must spend its force within the territorial limits of the state.' The Supreme Court of the United States, in Hilton v. Guyot, 159 U.S. 113, 16 S.C. 139, 40 L.Ed. 95, says: 'No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived.'"

See also Canadian Birkbeck Inv. & Savings Co. v. Williamson, 32 Idaho 624, 186 P. 916; Mason v. Jansen, 45 Idaho 354, 263 P. 484; Biewend v. Biewend, 17 Cal.2d 108, 109 P.2d 701, 132 A.L.R. 1264.

■ Second: To allow the extraterritorial application of I.C. § 32–505 to the Utah decree of annulment clearly would do violence to the full faith and credit clause, U.S.Const. Art. IV, § 1.

The record herein also shows that appellant was living with her husband at the time of the accident and resultant injury which caused his death. Appellant therefore became entitled to compensation benefits, as the deemed dependent of her husband, I.C. § 72–302, payable to her as "a widow, until death or remarriage, but in no case to exceed 400 weeks," I.C. § 72–303.

To "remarry" means "to marry again; to unite again in wedlock; to take a second husband or wife," and "remarriage" means "the act or instance of remarrying; state of being remarried." Webster's New Int'l Dictionary, 2nd Ed.

■ I.C. § 72–303 clearly contemplates a valid and subsisting marriage, and not a purported marriage adjudicated as void ab initio. Such view is supported by Eureka Block Coal Co. v. Wells, 83 Ind.App. 181, 147 N.E. 811, 812, which construed Section 38 of Indiana's Workmen's Compensation Act (Acts 1919, p. 165), which, similar to I.C. § 72–303, provided that "the dependency of a widow * * * shall terminate with * * * her marriage subsequent to the death of the employé." Said the Indiana Court:

"A marriage, within the meaning of the statute, is not a void or voidable marriage which may at once be annulled, but a valid and subsisting marriage."

See also Renzo v. Reid Ice Cream Corp., 279 N.Y. 83, 17 N.E.2d 778; First National Bank in Grand Forks v. North Dakota Work. Comp. B., N.D., 68 N.W.2d 661; Gulf States Steel Co. v. Witherspoon, 214 Ala. 529, 108 So. 573; Shamblin v. State Compensation Com'r, 122 W.Va. 652, 12 S.E.2d 527.

