15287

STATE v. MEREDITH

(15 S. E. (2d), 678)

November, 1940.

352

Mr. Grover C. Powell, of Atlanta, Ga., *Mr. C. E. Cooley,* of Anderson, S. C., *Mr. Hayden Covington,* of Brooklyn, N. Y., attorneys for appellant, with *Mr. Joseph F. Rutherford,* of Brooklyn, N. Y., on brief as "of counsel,"

*Mr. Randolph Murdaugh, Jr.,* of Hampton, Solicitor, and *Mr. W. N. Levin,* of Beaufort, appeared for the respondent.·

July 1, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The defendant, Thomas Meredith, belongs to a religious society or organization called "Jehovah's Witnesses," and was tried and convicted in a Magistrate Court in Beaufort County on a charge of violating Section 7120 of the Code of 1932. Upon appeal the Circuit Court affirmed the judgment of conviction, and appellant brings his appeal to this Court upon various exceptions.

The facts adduced to sustain the conviction follow: On the day of his arrest the defendant, supplied with books and pamphlets on religious subjects and a portable phonograph, was engaged in going from house to house through the rural districts of Beaufort County. The defendant would ask the person who responded to his call for permission to play on his phonograph a record of a Bible lecture or sermon. The appellant is a minister of the Gospel, and if the party solicited was interested, he offered for sale one or more of the books and pamphlets referred to. If the person had no funds, a book would be given him upon the promise being made that he would read it. He was arrested on the porch of a house while talking to the person who came to the door, but on this occasion he made no sale. The prosecution, however, relies for conviction upon evidence showing that he had effected a sale of one of his books two or three weeks prior to his arrest.

The literature carried around by the defendant consisted of books or booklets entitled "Refugees," and "Salvation,"

and copies of the "Watchtower" magazine, all of which are publications issued by the Watchtower Bible and Tract Society. The testimony shows that the main and primary purpose and occupation of the defendant was to preach and teach principles drawn from the Bible, in accordance with his faith, wherever one or two were gathered together and would listen to him. His was an evangelistic work, for which he received no material consideration, and to which he devoted his life. The distribution of the books and pamphlets was but another method or channel through which he disseminated the religious opinions and beliefs of Jehovah's Witnesses. An examination of them shows that they contain nothing offensive to good morals or hurtful to the general welfare. And it is quite clear that the sale and distribution of the literature were merely incidental to defendant's work of evangelism, and not related to any commercial enterprise conducted for personal profit. The record shows that the money paid by purchasers of the books and pamphlets was received as a contribution to the cause, and was devoted to the publication of other religious literature.

The defendant testified, "That in so doing, he acted in accordance with and pursuant to his faith and belief and convictions, and in obedience to the command of Almighty God, and that the act of distributing said printed matter was a part of the exercise of his duties as a minister and a part of his sincere worship of Almighty God, and was not for profit or gain, and was solely for the purpose of promoting the spread of the Gospel of the Kingdom of Jehovah God under Christ Jesus, in accordance with the teaching of the Holy Scriptures."

The immediate question before us is whether the lower Court erred in denying the defendant's motion for a directed verdict of not guilty. It is contended that the evidence shows no violation of the Code section under which he was prosecuted.

This Section (7120) does not purport either to define the offense of hawking or peddling, or to enlarge its definition as heretofore recognized, but simply declares that "no person shall, as hawker or peddler, expose for sale or sell any goods, wares and merchandise in any county" without having first obtained a license from the Clerk of the Court of Common Pleas.

Under the provisions of Section 7123, newspapers, magazines, and certain other named articles, are excluded from the operation of Section 7120, and may be sold without a license. However, in our opinion, books would be included therein under the general head of goods, wares and merchandise.

It seems to us that there is nothing in Section 7120 to indicate any intention on the part of the Legislature to give any new definition of the words "hawkers" and "peddlers" but the sole purpose was to regulate the granting of licenses to persons falling within the well-recognized definition of those words. Hence, in order to render one amenable to the penal provisions of the Act, it must be shown not only that he has sold the prohibited articles, but also that such sale was made by him as a hawker or peddler.

Under the conceded facts of this case, the "sale" of the book by the defendant was merely collateral to the main purpose in which he was engaged, which was to preach and teach the tenets of his religion. And in our opinion it is not peddling, as that word is usually construed, nor a violation of the statute, for a minister, under the circumstances shown here, to visit the homes of the people, absent objection, and as a part of his preaching and teaching to offer to sell or sell religious literature explanatory of his faith, where no profit motive is involved. The sale of his books and pamphlets, as heretofore pointed out, was merely incidental to the chief purpose of the defendant, which was the spreading of his religion.

We are not to be understood as holding that a business of selling or peddling books may not be subject to a license. But we do hold that under the facts appearing in this record, the defendant's motion should have been granted, and he should have been adjudged not guilty.

The principles hereinabove discussed by us, we think, are amply sustained in their application by the cases of *Alexander v. Greenville County,* 49 S. C., 527, 27 S. E., 469; *State v. Moorehead,* 42 S. C., 211, 20 S. E., 544, 26 L. R. A., 585, 46 Am. St. Rep., 719; *State v. Belcher,* 1 McMul., 40, 26 S. C. L., 40.

The Court of Appeals of Georgia reached the same conclusion found by us, under an identical state of facts, in the case of *Thomas v. City of Atlanta,* reported in 59 Ga. App., 520, 521, 1 S. E. (2d), 598.

Among the many errors assigned is, whether the statute materially interferes with and abridges freedom of speech and freedom of the press and of worship, as guaranteed by the Constitution of South Carolina, Art. 1, § 4, and by the Fourteenth Amendment to the Constitution of United States. However, in view of our holding that the statute in question is not applicable to the appellant, under the facts of this case, we do not deem it necessary to pass upon these constitutional questions.

Closely related questions, arising out of ordinances differently phrased, are discussed in *Cantwell v. Connecticut,* 310 U. S., 296, 60 S. Ct., 900, 84 L. Ed., 1213, 128 A. L. R., 1352; *Lovell v. Griffin,* 303 U. S., 444, 58 S. Ct., 666, 82 L. Ed., 949, Annotation, 127 A. L. R., 962.

Judgment reversed.

Mr. Chief Justice Bonham, Messrs. Justices Baker and Stukes and Mr. Acting Associate Justice L. D., Lide concur.