**DONLEY et al. v. CITY OF COLORADO SPRINGS et al.**

**No. 280.**

District Court, D. Colorado.

Aug. 9, 1941.

Samuel D. Menin, of Denver, Colo., for plaintiffs.

Ben S. Wendelken, of Colorado Springs, Colo., for defendants.

SYMES, District Judge.

Plaintiffs, residents of Colorado are, according to the stipulation of facts, members of Jehovah's Witnesses, duly authorized representatives of the Watch Tower Bible & Tract Society, Inc., under whose direction "each performed and performs the work of preaching the gospel of the kingdom of Almighty God, under Christ Jesus, in Colorado Springs and other parts of Colorado and the United States".

They bring this suit as individuals, and in and on behalf of all similarly situated, known as Jehovah's Witnesses, in the said City of Colorado Springs, Colorado.

The defendant, City of Colorado Springs, is a municipal corporation, and the individual defendants are the Chief of Police and the Police Magistrate of said city. It is stipulated that each of the plaintiffs has consecrated himself to do the work of Almighty God and is duly ordained of Almighty God and a sincere follower of the Lord Jesus Christ, and is preaching the gospel in such manner as he believes is required by God's law, from door to door.

The plaintiffs, and other members of the plaintiff organization were, at the time of their arrest by the defendants, going into and upon the private property of other persons in Colorado Springs, not theretofore having been requested or invited by the owner or occupant thereof. They would ring the doorbell and hand the person answering a card offering to take the subscription of the person for a year's subscription to the "Watchtower" and a book entitled "Religion" for a dollar contribution. They also offered various booklets on Bible subjects at a price of five cents for each booklet. If the party desires the booklet, but is unable to make a contribution, the booklet is left. At the same time the plaintiff would request permission to play a record on a portable phonograph, which suggested the purchase of a subscription to the booklet.

It further appears that defendants intend to continue the enforcement of the ordinance and to arrest and hold and harass all Jehovah's Witnesses engaged in the distribution of their publications in the manner ·above set forth, but are restrained therefrom by the stipulation and a temporary restraining order granted pending the outcome of this action.

It is further stipulated the plaintiffs are not rude or discourteous in the prosecution of said acts, and if informed by the owner or occupant of any property at which they call that they do not wish to hear or talk with the plaintiffs, or otherwise indicate a desire to have the plaintiffs leave, the latter do so at once and go about their work elsewhere. There is nothing obscene or objectionable in the books or pamphlets.

The arrest of the plaintiffs by the defendants is pursuant to an ordinance of the City of Colorado Springs prohibiting the practice of going upon residences in the said city by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, without the request or invitation of the owners or occupants of said residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, or peddling or hawking the same, or for the purpose of demonstrating or exhibiting the same.

Our jurisdiction is based upon a Federal question. Further, the action arises under the Fourteenth Amendment to the Constitution, and involves purely and solely civil rights and the alleged violation thereof under Tit. 28 U.S.C.A., § 41(14), conferring jurisdiction upon district courts of the United States of suits or injunctions to protect civil rights. See, also, Oney v. City of Oklahoma City, 10 Cir., June 9, 1941, 120 F.2d 861.

The stipulation concedes the sincerity of plaintiffs in their religious beliefs; that as followers of Jesus Christ they must preach the gospel of God's kingdom by going from house to house and according to the dictates of their own conscience.

Reynolds v. United States, 98 U.S. 145, at page 162, 25 L.Ed. 244, holds that no person has the right to say whether or not the act of another is or is not a genuinely obedient act of worship of Almighty God, and (98 U.S. at page 163, 25 L.Ed. 244), quoting Mr. Madison: "'that religion, or the duty we owe the Creator,' was not within the cognizance of civil government."

The case cites with approval the bill passed by the House of Delegates of Virginia, the preamble of which defines religious freedom, reciting: "'that to suffer the civil magistrate to intrude his powers into the field of opinion, * * * is a dangerous fallacy which at once destroys all religious liberty,' * * * [and] 'it is time enough for the rightful pur-

poses of civil government for its officers to interfere when principles break out into overt acts against peace and good order' ".

And that after the adoption of the Bill of Rights, Thomas Jefferson in expressing his approval of the act of the American people in declaring that the legislature should " 'make no law respecting an establishment of religion or prohibiting the free exercise thereof' ", said: " 'I shall see with sincere satisfaction the progress of those sentiments which tend to restore man to all his natural rights, convinced he has no natural right in opposition to his social duties' ".

Therefore we assume the sincerity of the plaintiffs in their profession that they stand in the same position as the Apostles did when hailed before magistrates and ordered to discontinue their preaching of the Gospel from house to house, and when commanded to desist firmly told the court "We had to obey God rather than man." And that it would violate their covenant to obey the law of God if they yielded to the threats of police officials in the performance of their religious duties.

First, there is the contention that plaintiffs do not come within the purview of the ordinance, as they are not vendors, peddlers or solicitors as those terms are used. In Thomas v. City of Atlanta, 59 Ga.App. 520, 1 S.E.2d 598, the Court of Appeals of Georgia held an ordained minister need not register his business with the city, nor is it "peddling" and required to be licensed under an ordinance for a minister to go into homes, preach, play a phonograph, sell or distribute literature dealing with his faith, if the home owner does not object. Further, that the teaching and preaching of a minister of a religious sect is not a business required to be registered under an ordinance, and sale by a minister of tracts connected with his faith is not in violation of an ordinance against "peddling". Under such a situation the court held the sale of a religious tract was collateral to the main object of the defendant, which was to preach and teach his religion.

In People v. Banks (a New York case), 168 Misc. 515, 6 N.Y.S.2d 41, it seems the code of the City of New York prohibited the sale of pamphlets on city streets without the prepayment of a license fee. The defendant was arrested for peddling booklets on the street without a peddler's license. It was held that to require the payment of a license fee for selling a pamphlet on the public streets was a violation of the First and Fourteenth Amendments of the Federal Constitution.

In State v. Stark, 196 La. 307, 199 So. 129, the state Supreme Court held the plaintiff, a Jehovah Witness, who was distributing and selling books and pamphlets disseminating the doctrines of his religious sect, was not a peddler within a statute defining a peddler as one who goes from house to house and place to place selling merchandise, which he carries with him, the court stating the distribution and sale of the books and pamphlets involved therein are in the nature of disseminating the principles and doctrines of this sect; that the only persons who would be interested in selling such books and pamphlets would be the members and believers in the religious sect.

The Supreme Court of Illinois had an almost identical ordinance before it in the case of Village of South Holland v. Stein, 373 Ill. 472, 26 N.E.2d 868, 127 A.L.R. 957. The ordinance made it unlawful for anyone to go in a private residence for the purpose of soliciting or canvassing for orders for goods, wares or merchandise, without obtaining a solicitor's permit from the village board. Appellant, a minister of the Gospel, was a Jehovah Witness and offered to a party a subscription to the "Watchtower", the magazine, along with a book, which the party bought and paid for. Appellant was endeavoring to get other subscriptions and did so without a permit. If the party solicited was interested she requested permission to play a record on her phonograph, consisting of a three-minute Bible lecture.

The court held the ordinance could not require a permit in order to take subscriptions for the publications involved, and even if the books came within the term "goods, wares and merchandise" as used in the ordinance, still they are publications purporting to be informative and semireligious in character and must be regarded as being within the same category in considering whether the constitutional rights of the appellants have been violated. The court held the ordinance invalid as violating both the state and Federal Constitution dealing with freedom of press and speech.

An ordinance of Atlantic City, New Jersey, provided newspapers and periodicals should be sold upon the highways only by persons who shall obtain a permit at a

fee of 25 cents, and that sales shall be made only under conditions and regulations provided for in the ordinance, and that the Director of Public Safety shall issue permits with power to revoke. In Herder v. Shahadi, 125 N.J.L. 153, 14 A.2d 475, appellant was convicted in the lower court of violating this ordinance in having sold without a permit a newspaper called "Weekly People". The Supreme Court of New Jersey reversed the conviction, holding that such an ordinance contains a vice that violated the constitutional provisions regarding free speech and free press, citing Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949.

In another New Jersey case, Tucker v. Randall, 15 A.2d 324, 18 N.J.Misc. 675, the ordinance involved provided no one shall, without a permit, solicit from house to house, or in any public street or public place, the gift of money for the use of any charitable or other institution. The Supreme Court reversed the conviction of a Jehovah Witness who, as the court said, in pursuance to the beliefs of his sect, conscientiously believed that to obtain a permit to preach the Gospel of God's kingdom would require him to do that which was in disobedience of the command of Almighty God; that the conviction trenched upon the inestimable privilege of worshiping Almighty God in a manner agreeable to the dictates of one's own conscience, and violated the Fourteenth Amendment to the Federal Constitution. The ordinance in question was limited to peddlers, hawkers and itinerant merchants and transient vendors of merchandise.

These cases, and many others that could be cited, indicate the plaintiffs before us were not engaged in the practice denounced by the several ordinances. 31 Words and Phrases, Perm.Ed., p. 569, in defining "peddler, hawker", etc., supports this view. It would seem the ordinance in question was intended for the protection of local merchants and other business interests in Colorado Springs against itinerant salesmen and solicitors, etc., who not being members of the community or permanent residents paid no taxes, had no interest in the local government, and contributed nothing to its support. It is therefore a forced and strained construction to attempt to include within the terms of this ordinance ministers of a duly recognized religious sect, sincerely engaged in the exercise of their faith in the manner thought best by them.

In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352, in discussing freedom of religion, the Supreme Court said the Amendment embraces two concepts, freedom to believe and freedom to act. The first is absolute, but in the nature of things the second cannot be. The Court pointed out (310 U.S. at page 306, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352), that under the cloak of religion nobody may, with impunity, commit frauds upon the public, and that penal laws are available to penalize such conduct. In that case Cantwell and his sons (Jehovah's Witnesses), were arrested in New Haven for going singly from house to house equipped with a pack containing books and pamphlets, a portable phonograph and set of records, which when played described one of the books. Each appellant asked the person who responded to his call for permission to play one of the records. If the permission was granted he asked the person to buy the book described, and upon refusal solicited such contributions towards the publication of the pamphlets as the listener was willing to make. If a contribution was received a pamphlet was delivered upon condition it would be read.

Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, 88 A.L.R. 177, relied upon by defendants, is not in point, for the appellant in that case was engaged in purely commercial transactions, to wit, taking orders for goods, and the questions here discussed were not mentioned. The cases already cited show plaintiffs did not come within the definitions of the Colorado Springs ordinance.

In Schneider v. State, 308 U.S. 147, at page 157, 60 S.Ct. 146, at page 149, 84 L.Ed. 155, it appears, an ordinance of the Town of Irvington, New Jersey, provided: "No person except as in this ordinance provided shall canvass, solicit, distribute circulars, * * * or call from house to house in the Town * * * without first having * * * received a permit from the Chief of Police * * *".

Petitioner, one of "Jehovah's Witnesses", was arrested and charged with canvassing without a permit, calling from house to house at all hours of the day and night, leaving booklets and discussing problems affecting the person interviewed. The Supreme Court said (308 U.S. at page 160, 60 S.Ct. 146, 84 L.Ed. 155), that although a municipality may enact regula-

tions in the interest of public safety, health, welfare or convenience, these may not abridge the individual liberty secured by the Constitution to those who wish to speak, write, print or circulate information or opinion. And held the ordinance in question could not be enforced without unconstitutionally abridging the liberty of free speech. Citing Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949.

In the latter, a much-cited case, the Court held an ordinance forbidding as a nuisance the distribution by hand or otherwise of literature of any kind without first obtaining written permission from the city manager strikes at the very foundation of freedom of the press, by subjecting it to license and censorship, and so held it applied to the distribution of pamphlets and magazines in the nature of religious tracts, and that pamphlets and leaflets are within the guarantee of liberty of the press.

A reading of the numerous cases on the questions involved discloses sufficient differences in the facts and the ordinances in question in any particular case to throw doubt upon its value as a precedent. A case in which a similar ordinance was passed upon by a District Court of the United States is Zimmerman v. Village of London, Ohio, D. C. S. D. Ohio, E. D., 38 F.Supp. 582, 583. Zimmerman, a Jehovah Witness, sued the Village of London. He had been arrested because he "went upon the premises of private residences, uninvited, for the purpose of vending and/or disposing of merchandise, to-wit: literature, contrary to Village Ordinance No. 767," the terms of which are exactly the same as the Colorado Springs ordinance before us. Therefore the question was squarely presented, as here, of the validity of an arrest for distributing printed material on private property without the invitation of the owner or occupant, and the court was required to determine whether or not a restriction of that character violated the Federal Constitution.

The court, in a memorandum opinion filed April 25, 1941, held the ordinance imposed what amounted to a virtual prohibition upon such distribution and interfered with the "free and unhampered distribution of pamphlets", which the Supreme Court in Lovell v. City of Griffin, supra, and Schneider v. State, supra, held was a violation of freedom of speech and freedom of the press, protected by the First Amendment from infringement by the Congress, and by the Fourteenth Amendment from infringement by state action. Therefore, under the authorities cited, the ordinance before us, as sought to be enforced against these plaintiffs, was a denial of the freedom of the press and of the right of free speech, its further enforcement must be restrained.

We therefore conclude the plaintiffs are entitled to relief on two grounds. First, that the plaintiff, a minister of the Gospel, is not within the definition of the ordinance. And, secondly, that as applied to him and his calling and the acts complained of, its enforcement deprives him of rights and privileges secured by the Constitution of the United States.

Let counsel submit findings of fact and conclusions of law and a proper decree.