COMMONWEALTH *vs.* SADIE AKMAKJIAN
(and twenty-three companion cases [1]).

COMMONWEALTH *vs.* NICHOLAS KARAMALIS
(and two companion cases [2]).

Essex.    October 4, 1943. — April 28, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Way,* Public: distribution of literature. *Hawkers and Pedlers. Munici-*
*pal Corporations,* By-laws and ordinances. *Religion. Newburyport.*
*Haverhill.*

One believing himself to be an ordained minister of Jehovah's Witnesses
and engaged on a public sidewalk in selling or giving away publica-
tions expounding his religion, without deriving personal gain therefrom,
was not a hawker or pedler within an ordinance of the city of New-
buryport imposing certain requirements on a hawker or pedler selling
or exposing for sale religious publications and certain other articles.

An ordinance of the city of Haverhill, prohibiting all persons, except news-
boys selling newspapers, from standing "in any street or way for the
purpose of selling any article, or for the exercise of any business or
calling unless otherwise provided by law, ordinance or special permit,"
was inapplicable to a pedestrian on a public sidewalk who, believing
himself to be an ordained minister of Jehovah's Witnesses, gave away
religious publications in furtherance of his beliefs without interfering
with other travellers.

TWENTY-FOUR COMPLAINTS, received and sworn to in the
District Court of Newburyport on various dates between
October 9, 1942, and December 24, 1942.

THREE COMPLAINTS, received and sworn to in the Central
District Court of Northern Essex on December 6, 1941.

Upon appeal to the Superior Court, the cases were heard
together by *Hobson,* J., a District Court judge sitting under
statutory authority.

---

[1] The defendants in the companion cases are Nicholas Arcidiacono, Salva-
tore Barbagello, Domenic Bonacorsi (two cases), Ida Bonacorsi, Sarah
Bonacorsi, Omberto Ciarcia, Sadie Ciarcia, Salvatore F. Ciarcia (two cases),
Santo Ciarcia, Irene Faro, Mary Giglio, Arthur Howell (two cases), Shirley
Judson, Louis J. Nitto, Vito Pavone, Severino Seminaro (two cases), Lillian
Skwara, Trifon Soulas, and Rose Tomaselli.

[2] The defendants in the companion cases are James Fanaras, and Cosmos
Pantas.

*H. C. Covington* of New York, (*A. A. Albert* with him,) for the defendants.

*J. J. Ryan, Jr.*, Assistant District Attorney, for the Commonwealth.

DOLAN, J.

## THE FIRST CASES.

The defendants in these twenty-four cases were complained of for violation of the provisions of c. 46, § 4, of the ordinances of the city of Newburyport. Having been found guilty in the District Court, they appealed to the Superior Court, where they waived trial by jury, were found guilty by the judge, and were sentenced to pay fines. The judge signed a certificate of reasonable doubt and suspended sentence in each case. The cases now come before us upon the exceptions of the defendants to the refusal of the judge to grant their requests for rulings. In view of the result we reach it is necessary to consider only requests 1 to 4, inclusive, which read as follows: "1. Upon all the law the defendants are not guilty. 2. That there is insufficient evidence to warrant findings of guilty. 3. That the defendants are ordained ministers, preaching the Gospel of God's Kingdom by distributing literature containing Bible sermons, and therefore the ordinance as properly construed does not apply to the activity of the defendants inasmuch as the defendants are not hawkers and pedlers. 4. If the court should find that the defendants were on the street for the purpose of selling religious magazines, publications or literature then said fact is insufficient to warrant findings of guilty, as it is immaterial whether said magazines, publications, or literature were being sold or distributed freely." The judge "found and ruled that the defendants were hawkers and pedlers within the meaning of the ordinance."

The ordinance in question, so far as here pertinent, provides as follows: "S 4 — No hawker or peddler shall sell or offer or expose for sale any of the articles enumerated in Section 17 of Chapter 101 of the General Laws or in any act in amendment thereof or any addition thereto until he has recorded his name and residence with the City Marshall or

such other officer or board as may be designated by the City Council." Among the articles enumerated in § 17 are newspapers and religious publications.

The material facts disclosed by the evidence are these: The defendants believe themselves to be ordained ministers of "the Gospel" and as such "Jehovah's Witnesses." Each of the defendants was walking back and forth on a public sidewalk in the city of Newburyport, three of the defendants on October 2, 1942, nineteen of the defendants on October 10, 1942, and two on December 23, 1942. Each of the defendants carried a canvas bag on which appeared the following: "Watchtower Explains the Theocratic Government" "5 Cents per Copy." The bags contained copies of the "Watchtower" and "Consolation." magazines of the "Watchtower Bible and Tract Society Inc." The defendants carried a copy of each of these magazines in their hands, in such manner that the public could see them. Certain members of the public who were approached by one or another of the defendants purchased copies of the "Watchtower." To these, copies of "Consolation" were given without charge. None of the defendants derived any personal gain from any money received. All of the proceeds went to the "Watchtower Bible and Tract Society for the publication of additional magazines." They were selling the magazines in question to preach the "Gospel of the Kingdom." None of the defendants had ever recorded his name and residence with the city marshall or "any other city authority."

We are of opinion that the case is largely governed in principle by *Commonwealth* v. *Richardson*, 313 Mass. 632, 638, in which we said, in part, that ordained ministers of Jehovah's Witnesses who were going from house to house to spread the teachings of their religious faith could not be found properly to come within the category of "peddlers or agents or canvassers," and that it had "been held in many cases [citing authorities] that ordinances regulating the conduct of such persons cannot be extended to cover the activities of ministers who go about on the streets or from house to house preaching or distributing or selling literature

relating to their faith." And in *Semansky* v. *Stark*, 196 La. 307, 311, and *Shreveport* v. *Teague*, 200 La. 679, ordinances relating to "solicitor," "peddler," "hawker," "itinerant merchant" or "transient vendor of merchandise," the phraseology of which was more inclusive than the ordinance in the cases at bar, were held not to embrace activities of a religious nature such as those in the cases at bar. See also *Cincinnati* v. *Mosier*, 61 Ohio App. · 81, 83–84; *People* v. *Finkelstein*, 170 Misc. (N. Y.) 188, 190. See *Martin* v. *Struthers*, 319 U. S. 141; *Busey* v. *District of Columbia*, 319 U. S. 579, 580. In the present cases we are of opinion that the ordinance in question applies only to those engaged in the pursuit of commercial enterprises and not to those engaged like the defendants in religious activities, and that "the mere fact that the religious literature is 'sold' . . . rather than 'donated' does not transform evangelism into a commercial enterprise." *Murdock* v. *Pennsylvania*, 319 U. S. 105, 111. *Follett* v. *McCormick*, 321 U. S. 573. And in *Commonwealth* v. *Pascone*, 308 Mass. 591, 597–598, it was held that the provisions of G. L. (Ter. Ed.) c. 101, § 17, refer to hawkers' and pedlers' licenses.

It must be taken as settled that the defendants cannot be held properly to be hawkers or pedlers within the meaning of the ordinance. *Commonwealth* v. *Richardson*, 313 Mass. 632, 638, and cases cited. The defendants' requests for a ruling that the evidence would not warrant findings of guilty should have been granted. In each case the entry will be ·

> *Exceptions sustained.*
> *Judgment reversed.*
> *Judgment for the defendant.*

### The Second Cases.

These cases come before us upon the defendants' exceptions to the refusal of the judge, before whom on appeal from the District Court the cases were tried without a jury, to rule that "upon all the law the defendants are not guilty" and that "there is insufficient evidence to warrant

findings of guilty," and upon their exceptions to the refusal of the judge to rule in substance that as applied to these cases "the ordinances and complaints thereunder" are void and invalid as in violation of the First and Fourteenth Amendments to the Constitution of the United States.

The only material difference in the facts in these cases from those in the first cases, just decided, are these: In the present cases two of the defendants, Pantas and Fanaras, believing themselves to be ordained ministers of Jehovah's Witnesses, were walking back and forth on the sidewalk of public ways in Haverhill, carrying canvas bags, each of which bore the legend "Watchtower and Consolation," and carrying in their hands, in view of pedestrians, copies thereof. Neither of these defendants either sold or gave away any of these publications. The third defendant, Karamalis, was conducting himself in a similar manner except that he admitted that he had passed out to passers-by "about a dozen copies" without charge before being approached by the police. The defendants did not interfere "in any way with foot travelers or with the public." None of them had a license or permit to distribute the publications on the public way, and Karamalis testified that "he did not and could not ask for a license or permit for to do so would be contrary to his conscientious Christian convictions." It was agreed that the other two defendants would testify "substantially the same." The only other feature that distinguishes the present cases from the first cases, just decided, is that the complaint was made for violation of the ordinances of the city of Haverhill, c. XXIV, Part 1, street regulations, § 7, which provides as follows: "No person, except newsboys selling newspapers, shall stand in any street or way for the purpose of selling any article, or for the exercise of any business or calling unless otherwise provided by law, ordinance or special permit."

It would serve no useful purpose to repeat the principles decisive of the present cases which are set forth in the first cases, just before decided, and more fully in the cases there cited. They must be taken to be settled by those authorities. The religious activities in which the defendants here

were engaged, and for which they were complained of, could not be restrained without abridging the rights guaranteed to them under the First and Fourteenth Amendments to the Constitution of the United States. And we are of opinion that, as in the first cases, the ordinance in the present cases properly construed applies only to those engaging in commercial enterprises, whether described as business or calling, and has no application to those who like the defendants are engaged in the furtherance of their religious belief as ordained ministers, and that therefore we are not called upon to strike down the ordinance as unconstitutional. We are not here concerned with any question of distribution of purely commercial leaflets. See *Valentine* v. *Chrestensen,* 316 U. S. 52, 55.

The case of *Commonwealth* v. *Prince,* 313 Mass. 223, affirmed sub nomine *Prince* v. *Massachusetts,* 321 U. S. 158, relied upon by the Commonwealth, is distinguishable on the facts, since it construed statutes providing in substance that no boy under twelve and no girl under eighteen should sell, expose or offer for sale any "newspapers, magazines, periodicals or any other articles of merchandise . . . in any street or public place." In the case just cited the statutes involved were held to be valid exercises of the police power, and it was held that "freedom of the press and of religion is subject to incidental regulation to the slight degree involved in the prohibition of the selling of religious literature in streets and public places by boys under twelve and girls under eighteen and in the further statutory provisions herein considered, which have been adopted as means of enforcing that prohibition" (page 229). Manifestly those considerations have no place in the present cases. *Commonwealth* v. *Pascone,* 308 Mass. 591, also relied upon by the Commonwealth, is distinguishable, since it appears that the statute construed in that case applied only to the city of Boston and to the occupation of movable structures of somewhat permanent character as to location, in applications for which plans are required to be filed describing their shape, dimensions, the space desired to be occupied and the kinds of merchandise intended to be sold or stored, and in connection

with the licensing of which authority is given to charge a fee of not less than $5 or more than $100 according to the estimate of the licensing authorities "of the value of the privilege granted." The statute applied to structures, locations in front of stores and places within the limits of Faneuil Hall occupied for the sale of provisions from wagons or other vehicles, and provided for the designation of streets in Boston, parts of streets therein or sections of that city wherein and not elsewhere in the city hawkers and pedlers might stop or stand for the purpose of selling merchandise on specified days and within specified hours. *Commonwealth* v. *Pascone*, 308 Mass. 591, 595–596. In that case it is to be observed, moreover, that only the legal sufficiency of the complaint and the constitutionality of the statute were attacked in the pleadings and that no issue was raised on the record as to whether the proof supported the charge (page 597). The statute there involved obviously aimed at the regulation of more or less permanent obstructions of the public ways and did not apply to the transitory character of the actions of the defendants in the present cases, who were on foot and distributing the literature for the purpose of "worshipping God in spirit and in truth by offering to the people going by" copies of the publications in question bringing the message of Jehovah's Witnesses, and who were not in any way interfering with foot travellers.

The defendants' requests for a ruling, in substance, that the evidence as matter of law would not warrant findings that the defendants were guilty of the offences complained of, should have been given. In each case the entry will be

*Exceptions sustained.*
*Judgment reversed.*
*Judgment for the defendant.*