TOWN OF GREEN RIVER,

*Plaintiff and Respondent,*

vs.

WILLIAM W. MARTIN,

*Defendant and Appellant.*

(No. 2568; March 10th, 1953; 254 Pac. (2d) 198)

For the defendant and appellant the cause was submitted upon the brief and oral argument of Albert E. Nelson of Rock Springs, Wyoming, and Hayden C. Covington of Brooklyn, New York.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of Frank R. Schofield of Green River, Wyoming.

Clarence A. Swainson of Cheyenne, Wyoming, and William D. Donnelly of Washington, D. C. filed a brief amici curiae on behalf of General Conference of Seventh Day Adventists.

## OPINION

BLUME, Chief Justice

In this case the defendant was charged in the Police Court of Green River, Wyoming, with violating Ordinance No. 175. He was found guilty and was fined

the sum of $25. The case was appealed to the District Court and the defendant was again convicted and fined the same sum. Thereupon the case was appealed to this court.

The first section of the Ordinance No. 175, under which the defendant was convicted, reads as follows: "The practice of going in and upon private residences in the Town of Green River, Wyoming, by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residence, for the purpose of soliciting orders for the sale of goods, wares, and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor."

The defendant is a member of the Jehovah's Witnesses, and as such claims to be an ordained minister of the Gospel. His activities include going from door to door for the purpose of interesting people in the Bible and distributing books and leaflets on religion. They are similar to those shown in the numerous cases involving Jehovah's Witnesses.

The ordinance involved herein is undoubtedly valid and constitutional in this jurisdiction at least as to transactions which are purely commercial. Town of Green River v. Bunger 50 Wyo. 52, 58 P. (2d) 456, appeal dismissed 300 U. S. 638, 57 S. Ct. 510; Town of Green River v. Fuller Brush Company, 10 Cir., 65 Fed. (2d) 112, 88 A.L.R. 177; Breard v. City of Alexandria, La., 341 U. S. 622, 71 S. Ct. 920 .But there is an extraordinary diversity of opinion among the courts as to the validity of the ordinance, or similar ordinances, as applied to Jehovah's Witnesses. Many

ordinances, sustained by the state courts, have been struck down by the United States Supreme Court. See Schneider v. New Jersey, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155; Martin v. City of Struthers, 319 U. S. 141, 63 S. Ct. 862, 87 L. Ed. 1313; Murdock v. Com. of Pennsylvania, 319 U. S. 105, 63 S. Ct. 870, 87 L. Ed. 1292; Follett v. Town of McCormick, 321 U. S. 573, 64 S. Ct. 717, 88 L. Ed. 938; Saia v. New York, 334 U. S. 558, 68 S. Ct. 1148, 92 L. Ed. 1574. It is the contention of the defendant herein, that the ordinance, fairly construed, does not contemplate the application thereof to the activities of Jehovah's Witnesses and, if construed as applicable to them it is unconstitutional in that it would interfere with freedom of the press and freedom of religious worship. A motion to quash the information upon these grounds was filed. In the case of City of Shreveport v. Teague, 200 La. 679, 8 So. (2d) 640, an ordinance exactly like that of Green River was in question. The defendant was charged in that " 'he did go upon private residence in the City of Shreveport without having been requested or invited so to do by the owner or occupant, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same.' " Reversing a conviction of the Jehovah's Witness in that case, the court stated among other things as follows: "It seems quite obvious to us from a mere reading of the above quoted section that the acts done by relator do not constitute a violation of the ordinance. Relator is neither a solicitor, peddler, hawker, itinerant merchant or transient vendor of merchandise. He is admittedly an ordained minister of a religious sect, who, instead of voicing his views from a pulpit, travels as an itinerant preacher from house to house. * * * Relator, cannot, by any stretch of judicial interpretation, be placed in the category of a peddler, hawker or

solicitor since it is perfectly plain that he did not enter the premises of any of the householders in Shreveport 'for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, * * * .' To hold otherwise, we would be compelled to attribute to the city Council of Shreveport the intention of declaring that the visitation into homes (without previous invitations) by priests and ministers of all religious denominations, accompanied by the sale of Biblical literature, constitutes a nuisance and a misdemeanor. This we will not do." Other cases which hold that offering for sale or selling religious literature by Jehovah's Witnesses is incidental and collateral to their main work, are: State v. Meredith, 197 S. C. 351, 15 S. E. (2d) 678; Thomas v. City of Atlanta, 59 Ga. App. 520, 1 S. E. (2d) 598; State v. Mead, 230 Iowa 1217, 300 N. W. 523. See also People v. Gage, 38 N. Y. S. (2d) 817; Semansky v. Stark, 196 La. 307, 199 S. E. 129; City of Cincinnati v. Mosier, 61 Ohio App. 81, 22 N. E. (2d) 418; Donley v. City of Colorado Springs, 40 Fed. Supp. 15; Commonwealth v. Akmakjian, 316 Mass. 97, 55 N. E. (2d) 6, and Murdock v. Com. of Pennsylvania, 319 U. S. 105, 63 S. Ct. 870, 874. In the last mentioned case, the court stated: "But the mere fact that the religious literature is 'sold' by itinerant preachers rather than 'donated' does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. The constitutional rights of those spreading their religious beliefs through the spoken and printed word are not to be gauged by standards governing retailers or wholesalers of books. * * * It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be

does not become a mere book agent by selling the Bible or religious tracts to help defray his expenses or to sustain him."

Counsel for the town seem to contend that cases based on the requirement of a license tax or permission by some official of the town or city have no bearing herein. That, however, is an error. If an ordinance, which limits or abridges the exercise of a right by censorship or by the requirement of a license tax, is invalid, an ordinance of the same nature which instead of limiting, absolutely prohibits the exercise of the right, is necessarily invalid also. See statement of Justice Reed in Jones v. City of Opelika, 316 U. S. 584, 61 S. Ct. 1231, 1238. An ordinance providing for the exercise of a right under reasonable limitations might well be valid, while an ordinance of the same nature absolutely prohibiting the exercise of the right might be invalid. A regulation may be, but is not necessarily, as stringent as a prohibition.

It is not necessary, we think, to go as far as to adopt the theory of the foregoing cases. We have cited them and quoted from them because they shed some light on the manner in which we should interpret the ordinance in question herein, and that we should avoid, if it may reasonably be done, passing upon the constitutional question raised herein.

Passing then to the examination of the ordinance, we think that it contemplates commercial activities. The terms solicitor, peddler, hawker, itinerant merchant, transient vendor, used in the ordinance show that to be true. As to what is included in such commercial activities is another question and need not, we think, be determined herein. The purpose of the activities of the persons contemplated in the ordinance is stated to be first, the solicitation of orders for the

sale of goods. No contention is made that the defendant was engaged in that activity. In the following clause of the ordinance, the purpose must be to dispose of and peddle or hawk goods. We do not think that the mere fact of disposal or purpose of disposal of goods gratuitously, and without offering them for sale or selling them is forbidden. If that were not so, the disposal of circulars or handbills, calling attention to a political rally, or a church supper, or a meeting of the town council, or a meeting of the people of the town at a regular election or otherwise, would be forbidden. We do not think the ordinance contemplates that, though we do not say that reasonable restrictions may not be placed thereon. See People v. Bohnke, 287 N. Y. 154, 38 N. E. (2d) 478. The correctness of this interpretation is borne out by the arguments of counsel for the town of Green River in this court. He places the same construction on the ordinance as we do. He stresses the fact and insists that the activities of the defendant herein were commercial. And judging from the statements of the trial judge, as found in the record, he, too, places the same construction on the ordinance. In other words, the ordinance contemplates that in any event, the disposal and purpose of disposal of goods must be commercial, that is to say in connection with a sale and that such sale, or at least an offer of sale is a fundamental and essential requirement in order that a defendant may be found guilty under the ordinance. The clause "for the purpose of disposing of * * * the same", if construed without reference to peddling or hawking, would seem to refer back to the previous clause relating to the solicitation of orders for the sale of goods. As already stated, there is no claim nor allegation that any orders were solicited.

Let us, then, turn to the information filed in the case

at bar. The defendant was charged with entering "upon the premises of John J. Thompson, a private residence, for the purpose of distributing and disposing of religious literature without prior invitation of the said John J. Thompson, contrary to ordinance No. 175." Compare this information with that in the Louisiana case of City of Shreveport v. Teague, supra. The defendant was not charged with the sale or offer for sale or with any purpose of sale or offer of sale of any such literature. Had he been charged with peddling or hawking these goods, a sale or offer for sale would probably have been implied. 39 C. J. S. 801, note 26. In other words, the information lacks one of the fundamental and essential requisites in order to constitute a crime under the ordinance. It is stated in 42 C. J. S. 1022 that: "If all the facts stated are true, and yet accused can be innocent of the crime intended to be charged, the indictment is bad. * * * The failure properly to allege any material fact or circumstances necessary to constitute the crime charged is a fatal defect, and such omissions cannot be supplied by a charge that the act was committed 'contrary to law' * * * ." It is true that for some unexplained reason—counsel thinks perhaps that the fatal defect could be urged at any stage of the proceedings, or even under a writ of habeas corpus—no objection was raised to the information except upon the grounds heretofore stated. Defects of substance were not waived. 31 C. J. 875; 42 C. J. S. 1343-1344; 42 C. J. S. 1360.

Ordinarily errors to which no exception has been taken, and which have not been called to the attention of the appellate court will be disregarded. See Espy v. State, 54 Wyo. 291, 92 P. (2d) 549, and cases cited. But there is an exception to that general rule. It does not, we think, behove this court to overlook and disregard a fatal defect which so patently appears in the

record before us that we could scarcely avoid noting it, even though both sides would have preferred that we would dispose of this case on another ground. Appellate courts will notice fundamental errors plainly appearing in the record, including fatal defects in the information, even though not excepted to or called to their attention by counsel. State v. Massey, 274 Mo. 578, 204 S.W. 541; 24 C.J.S. 704-705; 24 C.J.S. 331-332.

Furthermore, the defendant was charged only with entering the premises of John J. Thompson for the purpose mentioned, not with entering anyone else's premises. The only witness produced by the town to show this fact was the testimony of Thompson himself. He did not appear as a witness, but the parties stipulated as to what he would testify. That stipulation is as follows:

"While carrying on the above described door-to-door preaching activity on Friday, November 16, 1951, (Note—None had been shown so far as the record shows.) the defendant approached the house of John. J. Thompson located in the Town of Green River, Wyoming, John J. Thompson being the complaining witness in this case. The defendant knocked at the door, summoning Mr. Thompson, who answered the knock. The defendant explained the nature of his work as above described. (Note—None had been described as far as the record shows.) Mr. Thompson asked the defendant if he had a license to do the door-to-door work. The defendant stated he did not require a license to preach the Gospel from door to door. Mr. Thompson thereupon informed the defendant that he was not interested in the work of Jehovah's Witnesses. The defendant thanked him and walked away from the house. At the time Mr. Thompson answered the door, his baby inside the house was undressed and was exposed to the cold air from the open door. That's all."

The most cursory glance at this testimony shows that the town wholly failed to prove by this witness any commercial transaction, or even that the defendant entered his premises to dispose of literature. The most the testimony shows is that defendant entered Thompson's premises in order to preach.

We must not be understood as being in sympathy with the disturbance of homes by Jehovah's Witnesses or by anybody else. We are a Christian—or more accurately speaking—a religious nation, church-going or not, with the ordinary householder having a fixed religious belief. We cannot help but think that there is a great deal of verity in the statement contained in Pittsburgh v. Ruffner, 134 Pa. Supra. Ct. 192, 199, speaking of a person's freedom of religious worship, where the court said: "The very clause of the Constitution which protects him in his religious worship, protects others from having his religious tenants and beliefs thrust upon them, against their will, in their homes and offices." But we must decide cases on the facts before us.

It follows from what we have said that the judgment of the trial court must be, and is reversed, with direction to acquit the defendant.

Reversed.

RINER, J., and ILSLEY, J., concur, the latter before his death.