The CITY OF ANCHORAGE, a Municipal Corporation, Appellee,

v.

Ancel L. BERRY, Appellant.

Civ. No. A-9414.

District Court, Alaska
Third Division.

May 11, 1956.

William H. Sanders, Anchorage, Alaska, and Hayden C. Covington, Brooklyn, N. Y., for appellant.

John Rader, Anchorage, Alaska, for appellee.

McCARREY, District Judge.

This is an appeal from a judgment in the Magistrate's Court of the City of Anchorage in which the appellant was found guilty of "the offense of soliciting in residential area in violation of Ordinance No. Chap. 5 (Section No. 115.1)." A fine of $10.00 was imposed and the same suspended.

Section 115.1 of Chapter 5 of the Anchorage General Code of the City of Anchorage, Alaska, provides as follows:

"Soliciting in residential area. No solicitor, peddler, hawker, itinerant merchant, transient vendor of merchandise, or other person shall go in and upon private residences in the city for the purpose of soliciting orders for the sale of services, goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences."

The appellant is an ordained and presiding minister of the Anchorage congregation of Jehovah's Witnesses, and carries on missionary work under the direction of the Watch Tower Bible and Tract Society, Inc., and is assigned by the congregation to carry on such work in the City of Anchorage and environs. While acting in that capacity on the 30th day of November 1953, at approximately 12:00 noon, the appellant solicited one Faye Timmerman, who lived in Apt. No. 307 of the Wolhoy Apartments located in the City of Anchorage, Alaska, and after preaching a short sermon, he offered to sell her some religious books of his faith.

The sole question in this case is whether the appellant has violated the city ordinance, since the facts are not in dispute.

Mrs. Timmerman testified that the appellant was not invited to her apartment, but that he knocked on the door of her apartment, read from the Bible, and offered to sell her some literature which was contained in two bound volumes. She testified that he did not mention a specific price but she received the impression that the total cost was about $2, which sum covered the cost of printing and publication. She further testified that the appellant was polite and courteous, and after she advised him that she was not interested in purchasing his literature, he left. Another witness, Mildred Raye Page, was called, who resided in Apt. No. 203 in the same building. She also testified that the appellant was not invited to her apartment but that he solicited her to buy some of his pamphlets and books. However, he did not mention any price, and after he was advised that she was not interested, he left.

The appellant then called one Nicholas Kovalak, Jr., who testified that he was an ordained minister of the same church, and, in addition, he was director of the Watch Tower Bible and Tract Society, Inc., and that the appellant came under his direct supervision since he was in charge of the district consisting of Northern California, Oregon, Washington and Alaska. He testified that they do not use the radio as a media of disseminating their message since they have found that "face to face" contact is the most effective method of preaching their religious doctrine. He further testified that all of the pamphlets and books were sold virtually on a cost basis. He testified that there was no set price on the pamphlets, but that a book which contained a number of sermons, and which cost 45¢ to print, was sold generally for 50¢, whereas the book titled "New World Translation of the Christian Greek Scriptures" cost $1.40 and generally was sold by itself for $1.50. He also testified that the two books usually were offered for sale together for $1.85, or the exact cost of their printing. He testified that the appellant was paid no salary for his time and effort in the proselyting of members, and that the Watch Tower Bible and Tract Society, Inc., printed the various pamphlets and books for distribution

with the help of people who devoted their full time to printing without being paid for their services, and, further, that the printing company lost money on the work last year since these books and pamphlets were sold at cost so as to make them available to all people with little or no consideration being given to any profit.

He testified that when the book of sermons was sold for 50¢ and the Bible translation was sold for $1.50, the difference of 15¢ would be used by the minister to defray his cost of gas and oil used in transportation, as well as to defray the cost of postage, etc.

Thereafter, the appellant was called who corroborated the testimony of the witness Kovalak in the organizational foundation of the Watch Tower Bible and Tract Society, Inc., as well as in the cost and sale of the pamphlets and books here in question. No rebuttal testimony was offered by the appellee.

 A thorough study and search of the ordinance results in the difficulty of placing a minister of the gospel in any of the categories listed in the ordinance other than " * * * or other person * * * ." Assuming that a minister of the gospel fits in the category of " * * * or other person * * * ", it must then be determined whether such activities of that minister, as testified to by the appellant, could properly be designated as a sale within the meaning of the particular ordinance. A further question is presented and that is, if the activities of the appellant should be held to be a sale and, thus, prohibited by the ordinance, whether such an ordinance is constitutional.

It is necessary to pronounce here that municipal ordinances, such as the one here in question, prohibiting the solicitation and distribution of pamphlets by canvassing from house to house, have been usually held unenforceable as applied to those who deliver literature and solicit contributions from door to door in the name of religion, except when such conduct amounts to a breach of the peace.

See Schneider v. State (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, and cases there cited; Cantwell v. State of Connecticut, 310 U.S. 296, 60 S. Ct. 900, 84 L.Ed. 1213, reversing 126 Conn. 1, 8 A.2d 533, and cases there cited.

It cannot be said with any clarity that the appellant came within the prohibitive language of the ordinance, since the testimony of the complaining witness, as well as that of the appellant, does not support an offering of goods, wares, and merchandise for sale, in the true sense of those words.

To come within the ordinance, the transaction would have to have had a commercial nature. It cannot be said this was a fact in this particular transaction for there was evidence that money was lost on books and pamphlets sold at the prices hereinbefore set forth, when one took into account the cost of gasoline, postage and mailing costs, which necessarily follow in the ordering and delivering of such merchandise. As the two witnesses for the appellant testified, the transaction was considered, more or less, to be on a donation basis to defray the costs of publication and distribution. Such a construction appears reasonable, and as a general premise, a constitutional construction of an ordinance is preferred over that of an unconstitutional one. See San Francisco Shopping News Co. v. City of South San Francisco, 9 Cir., 69 F.2d 879. A court will pass upon the constitutionality of an ordinance only where it is necessary for it to do so. See Interstate Transit v. City of Detroit, 6 Cir., 46 F.2d 42; State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S.W.2d 809. If it were determined that a minister from a Jehovah's Witnesses' sect was in violation of the ordinance in calling door to door to sell his literature, a serious constitutional question would be raised. The City of Anchorage has cited the case of Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233, which upheld the right of the city to regulate peddlers, salesmen, etc. This case involved a magazine salesman who was engaged in a transaction of a commercial

nature, and unless it was held that the transaction engaged in by the Appellant was one of a commercial nature, this case could not be considered in point, which I find it is not.

34 Words and Phrases, p. 215, defines "profit" as follows:

"'Profit' is the gain made upon any business or investment, when both the receipts and payments are taken into the account"

and

"Profit is the acquisition beyond expenditure; excess of value received for producing, keeping, or selling over cost; hence pecuniary gain in any transaction or occupation; emolument."

Webster's New Collegiate Dictionary, for the year 1953, gives as one of its definitions of the word "profit" the following:

"The excess of returns over expenditure in a given transaction or series of transactions; also, the excess of income over expenditure, as in a business, during a given period of time."

The same authority defines the word "commercial" as:

"Of or pertaining to commerce; mercantile; as, *commercial* houses; a *commercial* treaty. 2. Having financial profit as the primary aim."

The same authority defines the word "commercialize":

"To render commercial; esp., to make profitable in a business way."

It is obvious from the transaction that the Appellant did not go to the apartment of the complaining witness for the purpose of making a sale, and did not disturb the peace of anyone, under the holdings of the courts (supra), but, rather, for the primary purpose of preaching his religion in an attempt to proselyte followers for his religious beliefs and congregation; thus, the sale, if it can be considered such, was incidental to this method of preaching. The transaction only augmented the religious message and oral sermon which the witnesses testified he gave. Appellant was not peddling, hawking, nor was he an itinerant merchant and vendor of merchandise, but, on the contrary, the Appellant's primary purpose in going to the apartment of the complaining witness was to deliver a religious message, which he attempted to buttress by the religious writings that he sought to leave in consideration of recovering their bare costs.

I am of the opinion that the Appellant does not come under or within the purview of Chapter 5, Section 115.1, and therefore find for the Appellant and against the Appellee, City of Anchorage, as heretofore orally announced in open court.

Having determined that the act complained of is not a violation within the purview of the ordinance, the other legal points raised need not be considered.