**Bob TATE and Jerry Higgs, Plaintiffs,**

v.

**Lola AKERS and Dorothy Dietz, etc., Members of the City Council of the City of Laramie, Wyoming, et al., Defendants.**

No. C75–147.

United States District Court,
D. Wyoming.

Feb. 25, 1976.

Hugh B. McFadden, Jr., of Corthell, King, McFadden, Nicholas & Prehoda, Laramie, Wyo., and Boardman Noland, Washington, D. C., for plaintiffs.

Thomas S. Smith, of Smith, Stanfield & Scott, Laramie, Wyo., for defendants.

## MEMORANDUM OPINION

BRIMMER, District Judge.

The plaintiffs, Bob Tate and Jerry Higgs, brought this class action on be-

half of themselves and others similarly situated, pursuant to Rule 23(a)(3), Federal Rules of Civil Procedure, seeking a declaratory judgment under the provisions of 28 U.S.C. Sections 2201 and 2202, with jurisdiction being founded upon 28 U.S.C. Section 1343.

Plaintiffs Tate and Higgs are members of the Seventh Day Adventist Church. They wish to engage in a campaign of "literature evangelism" in the City of Laramie, Wyoming, during which the plaintiffs and others will go from door-to-door speaking with local residents about religious matters and seeking to interest them in purchasing various books and sets of books which deal with matters of religion and health. It is a basic tenet of plaintiffs' religion that the body is the dwelling place of God's Holy Spirit; therefore, they believe that matters of health and health education are essential to living a completely Christian life.

The defendants are councilmen and councilwomen, the mayor, and the Chief of Police of the City of Laramie. They have informed the plaintiffs that the City intends to enforce Section 28-3 of the Laramie City Code with respect to these plaintiffs. This ordinance is commonly referred to as a "Green River Ordinance," and reads in pertinent part as follows:

Section 28-3. *Uninvited solicitation at private residence.* The practice of going in and upon private residences, in the city, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited to do so by the owner or occupant of such private residence, for the purpose of soliciting orders for the sale of goods, wares, and merchandise, or for the purpose of disposing of or peddling or hawking the same, is hereby declared to be unlawful and a nuisance. The chief of police and police force of the city shall suppress the same and abate any such nuisance.

The plaintiffs ask the Court not only to declare the ordinance inapplicable to them but also to declare the ordinance unconstitutional and in violation of the provisions of 42 U.S.C. Sections 1981 and 1983, if applied to them, and seek an order permanently enjoining the defendants, their successors and agents from enforcing the ordinance against them and other members of their class.

The Seventh Day Adventists comprise a religious denomination which numbers more than 2,500,000. Literature evangelism, a formal program of the church, is organized on a world-wide basis. The church has relied upon literature evangelism as a primary means of proselytizing for more than one hundred years. Prior to being selected as a colporteur, which is a literature evangelist, a church member is subjected to a rigorous investigation to determine his suitability for this calling, and he also is trained in church doctrine. The literature evangelist is not necessarily an ordained minister; however, he is given credentials by his church, and he is considered by it to be engaging in a type of ministry. Members of the church who engage in this activity believe themselves to have been called to carry on this particular ministry of the church.

The literature evangelist goes from door-to-door attempting to engage residents in conversations about contemporary problems and proposing to offer a religious solution to them. If the householder shows no interest or does not invite him into the house, the literature evangelist politely leaves. If the householder invites the literature evangelist into his home, the evangelist discusses these world problems, offers his religious solution to them, and in the course of it, may offer to sell the individual any one or more of a series of publications produced by the church.

The publications which the literature evangelist offers for sale are magazines and handsomely illustrated, hard-bound books. These magazines and sets of books range in price from approximately $8 for the magazine subscriptions to in

excess of $125.00 for one of the many sets of hard-bound books. Their subject matter ranges from purely religious matters such as stories from the Bible, designed for both children and adults, to treatises on health and home medicine. If the individual is not interested in purchasing any of the sets offered for sale, the literature evangelist offers to pray with the individual or the family and also offers to leave with them at no cost a 32-lesson homestudy Bible course. The evangelist also endeavors to make an appointment for a return visit in order to continue the ministry which has begun with this first visit.

One of the literature evangelist's principal sources of income is the commission which he earns from the sale of these books and magazines. This commission averages twenty-five percent of the sale price of the books. The books are sold either for cash or on an installment contract with interest on the deferred balance. The contract generally complies with the provisions of the Wyoming Uniform Consumer Credit Code and is a typical commercial financing agreement, but the church has not resorted to its legal contractual rights since it feels that it is operating a non-profit enterprise in a credit-conscious society that is accustomed to making purchases on such a basis.

The church gives additional financial assistance to its literature evangelists in the form of a subsidy for living quarters, for automobile expenses, and for vacation and medical expenses. When the literature evangelist is a minister of a Seventh Day Adventist congregation, he receives a salary paid by the congregation. However, it is the colporteur's commission on which the door-to-door evangelism depends for its success.

Because of the commission aspect of the colporteur's activities, the defendants contend that the plaintiffs and others of their class are subject to the provisions of the ordinance and are subject to prosecution if they approach a private residence without a prior invitation. In taking this position, the defendants assert that the present factual situation is distinguishable from those found in the numerous cases which were decided in the early 1940's when similar ordinances were challenged by members of Jehovah's Witnesses who were engaged in similar door-to-door activities. These decisions, almost without exception, declared that the ordinances were either inapplicable to persons engaged in what was viewed as an essentially religious activity or unconstitutional and invalid if applied to the Jehovah's Witnesses. See *Schneider v. Town of Irvington*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Follett v. McCormick*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944); and Annot., 77 A.L.R.2d 1216, which collects several of the state and federal district court decisions.

Defendants argue that those cases decided by the United States Supreme Court are distinguishable because, with the exception of *Cantwell v. Connecticut*, all of the ordinances struck down required some kind of license. Such a view is erroneous, as the Wyoming Supreme Court noted when it rejected the same contention in *Green River v. Martin*, 71 Wyo. 81, 254 P.2d 198, 200 (1953):

> Counsel for the town seem to contend that cases based on the requirement of a license tax or permission by some official of the town or city have no bearing herein. That, however is an error. If an ordinance, which limits or abridges the exercise of a right by censorship or by the requirement of a license tax, is invalid, an ordinance of the same nature which instead of limiting, absolutely prohibits the exercise of the right, is necessarily invalid also.

■ Like other "Green River Ordinances," the language of the Laramie ordinance is applicable to commercial activities, and the terms "solicitors, ped-

dlers, hawkers, itinerant merchants and transient vendors of merchandise" show this to be true. That this type of ordinance is constitutional when applied to purely commercial activities is also clear. *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Green River v. Fuller Brush Co.*, 65 F.2d 112 (10th Cir. 1933); *Green River v. Martin, supra.*

Yet, there can be no doubt that the literature evangelists of the Seventh Day Adventist Church are engaged in a ministerial calling. It is a forced and strained construction to attempt to include within the terms of this ordinance ministers of a duly recognized sect who are sincerely engaged in the exercise of their faith in a manner they think best. *Donley v. Colorado Springs*, 40 F.Supp. 15 (D.Colo.1941). The fact that these colporteurs also sell literature which conforms to their religious beliefs does not change the nature of their profession. *Shreveport v. Teague*, 200 La. 679, 8 So.2d 640 (1942). Nor does the fact that these literature evangelists go into private homes, when the owners do not object, to preach, to pray with members of the household, or to sell or distribute literature dealing with their faith, convert them into peddlers. *Thomas v. Atlanta*, 59 Ga.App. 520, 1 S.E.2d 598 (1939). Moreover, it is doubtful that the City of Laramie, when it originally adopted this ordinance, intended it to apply to those engaged in disseminating the doctrines and principles of any religious sect, *State ex rel. Semansky v. Stark*, 196 La. 307, 199 So. 129 (1940), and it will not be presumed that they intended to enact a law in violation of constitutional restrictions. *State ex rel. Keefe v. McInerney*, 63 Wyo. 280, 182 P.2d 28 (1947). The Court therefore concludes that the plaintiffs and others of their class are not members of the class of persons which this ordinance seeks to regulate.

The defendants urge that, regardless of how these plaintiffs are characterized, the evidence shows that what the plaintiffs propose to do is a commercial activity which is properly subject to regulation by the city under the provisions of Section 28–3, Laramie City Code. This view must also be rejected. Even if the books may come within the terms "goods, wares, and merchandise" as used in the ordinance, they still remain publications which purport to be informative and religious or semi-religious in character. *Donley v. Colorado Springs, supra*, at 17.

While it is true that there are commercial aspects to the sale of these materials, their distribution still remains but another method or channel through which the literature evangelist disseminates the religious opinions and beliefs of his church, pursuant to his faith, belief, and convictions and in obedience to God's command. *State v. Meredith,* 197 S.C. 351, 15 S.E.2d 678 (1941). The primary mission of the colporteur in going into these private dwellings is still to spread the gospel.

That the literature evangelist relies upon the sale of religious material to buttress his preaching does not subject him to the requirements and prohibitions of the ordinance. *Anchorage v. Berry,* 145 F.Supp. 868, 16 Alaska 296 (D.Alaska 1956). To say that this transforms an activity from a religious one to a commercial one would require a similar holding as to priests and ministers of all religious denominations who accompany their visitations with the sale of Biblical literature, a position this Court will not adopt. *Shreveport v. Teague, supra*, at 642.

Finally, it must be noted that religious activities cannot be restrained without colliding with those rights guaranteed by the First and Fourteenth Amendments. *Commonwealth v. Akmakjian,* 316 Mass. 97, 55 N.E.2d 6 (1944). Furthermore, the Wyoming Constitution, Article I, Section 20, provides that "every person may freely speak, write and publish on all subjects." This provision is broader than that found in the First Amendment to the United States Constitution in that it also guar-

antees the right to publish which includes the right not only to speak and to write but also to make the same known. *South Holland v. Stein*, 373 Ill. 472, 26 N.E.2d 868 (1940). The position advocated by the defendants is confronted with a serious constitutional objection. *Anchorage v. Berry, supra.* However, since neither the plaintiffs nor the activities in which they seek to engage are of the kind within the contemplation of the ordinance, it is unnecessary to decide the case upon the constitutional issues raised by the plaintiffs. *Cincinnati v. Mosier*, 61 Ohio App. 81, 22 N.E.2d 418 (1939); *Commonwealth v. Akmakjian, supra; South Holland v. Stein, supra; Anchorage v. Berry, supra.*

Judgment for the plaintiffs enjoining the defendants and their successors from enforcing Section 28–3 of the Laramie City Code against the plaintiffs and other members of their class accordingly shall be entered.

## JUDGMENT

This matter having come on regularly for trial before the Court, sitting without a jury, upon the complaint of the plaintiffs for a declaratory judgment and an injunction against the defendants enjoining the defendants, their successors and agents, from enforcing Section 28–3 of the Laramie City Code, of the City of Laramie, Wyoming against the plaintiffs and other members of their class, and the Court having heard and considered the evidence of the parties and the arguments of counsel, and having made and entered herein its Memorandum Opinion containing its findings of fact and conclusions of law, finding generally for the plaintiffs and against the defendants and finding that Section 28–3 of the Laramie City Code of the City of Laramie, Wyoming is inapplicable to literature evangelists and that an Order should be entered permanently enjoining the defendants, their successors and agents from enforcing said Section 28–3 of the Laramie City Code against plaintiffs and other members of their class; it is

Ordered and adjudged that Section 28–3 of the Laramie City Code of the City of Laramie, Wyoming is inapplicable to literature evangelists of the Seventh Day Adventist Church, and that the defendants, as officials of the City of Laramie, Wyoming, their successors and agents, be, and they hereby are, permanently enjoined from enforcing the provisions of said Section 28–3 of the said Laramie City Code against the plaintiffs and other members of their class of literature evangelists of the Seventh Day Adventist Church.